JOHN J. WANNER and others

v.

BENJAMIN F. SISSON.

1. In a suit in this court to quiet title and restrain an action of ejectment, a deposition of a witness in that action who has since died is competent, the action at law having been substantially between the same parties and for the same land.

2. A person who, having discovered a flaw in a title to land, purchases the title for speculation, with a view to ousting the possessors, who claim to be the real owners, is not a *bona fide* purchaser.

3. Possession by a man or his tenant is notice of the title, equitable as well as legal, under which he claims the property.

Bill for relief. On final hearing on pleadings and proofs.

*Messrs. I. W. Scudder, J. B. Vredenburgh, Robert Gilchrist* and *James Flemming,* for complainants.

*Messrs. L. Zabriskie, T. N. McCarter* and *B. Williamson,* for defendant.

Wanner *v.* Sisson.

The Chancellor.

On the 19th of April, 1841, Joseph P. Peters and his wife conveyed to Mortimer A. F. Harrison a lot of land of two acres or thereabouts, in what is now Jersey City. The land had cost Peters $4,000, and he had built a stone dwelling-house upon it. He sold the property to Harrison for $13,000. That is the consideration stated in the deed. It was a full price for the fee of the property, with all the improvements thereon. The grantors, by the deed, "granted and conveyed" the property, with the appurtenances, and their estate, title and interest therein, and Peters thereby covenanted that he was the lawful owner of the premises, and seized of a good and indefeasible estate of inheritance (as he was, in fact,) therein, clear of all encumbrances, except a mortgage to William Burdon for $4,000, with interest, which Harrison thereby assumed to pay, the amount thereof being allowed to him as so much of the purchase-money. Peters further covenanted with Harrison that he would warrant and defend the premises in the quiet and peaceable possession of the latter, his heirs and assigns forever. The deed was duly acknowledged, and was recorded in the clerk's office of the county of Hudson, on the 19th of April, 1841, the day of its date. To secure the payment of $7,000 of the purchase-money, Harrison gave to Peters his mortgage on the same property, of even date with the deed. The mortgage contained a power of sale. It was cancelled of record on the 16th of May, 1842. On the 27th of April, 1842, Harrison gave to Peters another mortgage, for $2,000 and interest, on the same premises, and also a mortgage thereon for $7,000, with interest. The latter is the only one of those mortgages of which the full contents can now be found. It is in fee, and it contains a power of sale, authorizing the mortgagee, his heirs, executors, administrators or assigns, in case of default in the payment of the principal or interest thereby secured to be paid, to sell and convey the property in fee, and, after paying from the proceeds the money secured by the mortgage, with

costs of sale, to pay the overplus, if any, to the mortgagor, his heirs, executors, administrators or assigns. And it was thereby provided, that such sale should forever be a perpetual bar, in law and equity, against the mortgagor, his heirs and assigns, and all persons claiming or to claim under them. . On ·the 19th of June, 1841, a tripartite deed was made between Peters, Harrison and Burdon, (the last being then the holder of the mortgage mentioned in the deed from Peters to Harrison) by which it was recited that Burdon's mortgage was without words of inheritance, through a clerical omission; that Peters had, subsequently to the giving of the mortgage, sold the premises to Harrison, subject to the mortgage; that it was intended that Burdon should have a fee in the property, and Harrison was willing that the mortgage should be considered as vesting a fee in him, and should maintain its priority over the conveyance to him; and Peters and Harrison, therefore, thereby ratified and confirmed to him, his heirs and assigns forever, the premises, subject to the covenants and provisos in the mortgage. Harrison, on the conveyance to him, entered into possession of the property, and resided there with his family. He improved it every year, at a large expense. Many of the improvements were of a permanent character, and such as indicated his belief that he was the owner of a good and indefeasible estate in fee. He built a house of stone and brick upon the property; built a large addition to the barn; bought land in fee to secure frontage on the street; built a fence of a lasting kind (of iron bars and turned wooden posts, and set on a stone foundation), and made costly and durable improvements to the inside of the mansion-house, which was occupied by himself and his family. In all respects he dealt with the property as if he were the owner of the fee therein. On the 17th of January, 1851, he sold and conveyed it to Charles A. Gregory, in fee, for the consideration of $15,000, its full value. By various mesne conveyances, in fee, the complainants respectively became the owners, as they supposed, of the title, in fee, to

parts of the property. On the 17th of August, 1870, the defendant, Benjamin F. Sisson, consummated a purchase which he had a few days before then agreed to make, from Caroline O. Peters, sole heir at law of Joseph P. Peters, who is dead, for the conveyance to him, for the consideration of $2,000, in gold, of all her interest in the real estate of her father, whether in this state or elsewhere, and on that day received from her a deed for that interest accordingly. He subsequently began actions of ejectment against John E. Donnelly, tenant of the complainant John J. Wanner, the complainant Thomas Aldridge and his wife, Robert J. Rogers, since deceased, and Jane S., his wife, (the latter one of the complainants in this suit,) and Frederick W. Kline, also one of the complainants herein, for the recovery of possession of the land so held by them. He alleged that the deed from Peters to Harrison contained no words of inheritance, and therefore conveyed only an estate for the life of Harrison, who died in 1861.

In the suit against Donnelly, the complainant (John J. Wanner) was admitted to defend as landlord. That suit resulted in a verdict in favor of the defendants therein, and a judgment thereon in the supreme court, which was, on error, reversed by the court of errors and appeals. *Sisson* v. *Donnelly,* 7 *Vr.* 433. The bill is filed to restrain Sisson from further prosecuting those suits; to reform the deed from Peters to Harrison by inserting therein words of inheritance, if those words were not, in fact, therein; to quiet the complainant's title to their lands, and to obtain a decree that Caroline O. Peters, or the defendant, Benjamin F. Sisson, convey or release to the complainants, respectively, any title they may claim in the premises to which the complainants claim title under the deed from Peters to Harrison.

The property has acquired a very great value, and has been improved by the persons who have had it in possession since the conveyance by Harrison to Gregory. The defendant has answered, setting up his title under the deed from

Wanner *v.* Sisson.

Caroline O. Peters to him, and a considerable amount of testimony has been taken on the part of the complainants, but none on the part of the defendant. The complainant offered and produced in evidence the deposition made by William H. Bell (since deceased), in the ejectment suit above mentioned, brought by the defendant (Sisson) against Donnelly, and in which, as before stated, the complainant (Wanner) was admitted to defend as landlord. The defendant's counsel objects to the admission of the deposition. It is competent evidence in the cause. 1 *Dan. Ch. Prac.* 869. It was taken in a suit between the defendant and the complainant (Wanner), in reference to the same land and involving the same question, the validity of the defendant's title under the deed from Caroline O. Peters to him, which is involved in this suit. The other complainants claim under the same deed (the deed from Peters to Harrison) as Wanner, and the subject-matter of the litigation, as well at law as in this court, between the defendant and them, is the same as that between him and Wanner. The complainants claim under the same deed, and the defendant claims under the same title as against each of them. The only difference between the complainants is, that they claim distinct and different parts of the same property.

That Peters intended to convey to Harrison, and the latter expected to receive, and supposed that he had obtained by the deed from the former to him, a title in fee-simple, is abundantly clear. The price paid for the property was a full price for the fee-simple therein. The grantor or his heirs never, at any time, claimed any interest in the property by way of reversion after the deed was made. Harrison died, as before stated, in 1861. The deed to the defendant was not made till 1870. In his references to the property, the grantor, Joseph P. Peters, spoke of it as belonging to the grantee by an absolute and unlimited estate. The deed was made and executed in New York. The title in fee to the property would have passed by it without words of inheritance had the premises been in that

10

state. It cannot be found. It appears by the record to describe the property by metes and bounds, and then further to describe it as the same which was conveyed to Peters by Van Winkle and his wife, by a certain deed. That deed conveyed the property to Peters in fee. The deed to Harrison, according to the record, not only in nowise limits the estate thereby conveyed, but it grants and conveys all the estate, title and interest of the grantors in the property. Not only this, but Peters thereby covenanted that he was seized of a good and lawful estate of inheritance in the property, and covenanted to warrant and defend the property to Harrison, his heirs and assigns forever.

The conveyance was made subject to a mortgage, which was then supposed, as appears by the tripartite deed, to mortgage the fee, and which, notwithstanding the absence (through clerical omission, as stated by the tripartite deed) of words of inheritance therefrom, which had not, when the deed to Harrison was executed and delivered, as yet been discovered, was intended to convey a fee by way of mortgage. By the deed, Harrison assumed the payment of the mortgage. The full contents of but one of the mortgages given by Harrison to Peters, on account of the purchase-money, can be found. By that the former mortgages to the latter the premises in fee, and empowers him and his legal representatives, in case of default in the payment of the principal or interest of the mortgage according to its provisions, to sell the property and convey it in fee, and provides that after payment, out of the proceeds of the sale, of the amount secured by the mortgage, with the expenses of sale, the overplus be paid to Harrison or his legal representatives. This mortgage having been given for purchase-money, is of importance in ascertaining the intention of the mortgagee in making the conveyance of the property to the mortgagor.

It is hardly to be supposed that Peters, had he intended to convey to Harrison merely a life-estate in the land, would have accepted from him on account of the purchase-money,

or on any account, indeed, a mortgage in fee on the property, and would therein have stipulated that on default the fee of the property should be sold, and, after paying the amount secured by the mortgage, with costs of sale, the overplus should be paid to Harrison or his legal representatives. Again, had Peters intended to convey to Harrison a life-estate merely, it is reasonable to suppose that that fact would have appeared in the tripartite deed. Burden testifies that that deed was made for Harrison's benefit, and that the intention in making it was to assure the property to Harrison. It seems more probable, however, that the deed was made for Burden's benefit, and that at that time the error in Harrison's deed, if any there was, had not been discovered, while that which was in Burden's mortgage had been. The considerations above stated are sufficient to warrant a decree that the deed be reformed, as prayed in the bill, (*Weller* v. *Rolason,* 2 *C. E. Gr.* 13; *Randolph* v. *N. J. W. L. R. R. Co.,* 1 *Stew.* 49; *Kerr on Inj.* 55) unless the defendant is, as his counsel insists he is, a *bona fide* purchaser for valuable consideration, without notice, and as such entitled to the protection of this court. To consider this claim: In the first place he had notice that the complainants claimed to own their land by a fee-simple title. They were in possession. He had notice, also, that the person from whom he purchased did not claim to own any estate whatever in the land. Her counsel, with whom he bargained, told him that she had nothing in it to sell. One of them, Mr. Samuel P. Bell, testifies that he told the defendant, before the deed from Miss Peters to him was made, that Peters had conveyed the property to Harrison for $13,000, and the latter had conveyed it to Gregory for $15,000, and showed him a memorandum of the book and page of the record of those conveyances. He adds that he told the defendant that they, Miss Peters's counsel, could not see that there was any property there. When the defendant applied to purchase Miss Peters's interest in her father's estate, though he was particularly anxious, as it appeared, to get a

deed for any interest she might have in her father's real property in this state, he refused to tell what his object was, or what it was that he was, in fact, bargaining for. He said he wanted all the estate of Miss Peters, as heir at law of her deceased father. When asked by her counsel, in her presence, if he would give them any idea of its value, or the chances of the litigation which he contemplated if he should get the conveyance, he answered that he would not make any representations of any kind; that they must look out and examine for themselves; that he was not going to make any misrepresentation, or anything that might be construed into a misrepresentation. He said that it was his secret, and they would never find it out. His offer for the conveyance was $1,000, and he accompanied it with another, that if he should recover what he was seeking to obtain, he would pay Miss Peters an additional $500, provided she, on her part, would stipulate to return to him $500 of the $1,000 in case of his failure.

These propositions were neither of them accepted, and it was finally agreed that he should pay $2,000 in gold, as consideration for the deed, which he paid accordingly, and obtained the deed. He caused the deed to be drawn and brought it to the office of Miss Peters's counsel, to be executed by her. After the transaction had been closed, and the deed delivered, he communicated to Miss Peters's counsel his object in obtaining the conveyance. It was to enable him to avail himself of the supposed defect of the conveyance from Peters to Harrison. He had learned from his brother in Jersey City (he, himself, lived in Binghamton, in New York,) of the character of that deed, as it appeared from the record thereof that it conveyed a life-estate merely. On the counsel saying to him that the omission of the words of inheritance in the record of the deed was probably a mistake made by the county clerk in recording, and that the production of the original deed would settle the matter, and if not, that the covenants in the deed would cure the defect, he said that he knew that was the law of

New York, but that he had been advised by counsel in this state that the law here was different. He said he was going to commence ejectment suits against the tenants of the property, and that there would be two or three instituted as test actions. He, himself, stated that the property was worth $75,000. It is probably worth $120,000. Full evidence of the fact that he concealed his design, and also of the manner in which he executed his purpose of obtaining the deed, is to be found in the testimony of one of the counsel of Miss Peters, who testifies that he never heard (and he was Peters's counsel in the life-time of the latter) that Peters's heirs had any interest in the real estate conveyed by Peters to Harrison, until after the deed from Miss Peters to Sisson had been delivered, and that if he had known before the delivery of that deed what he knew afterwards, no amount of money that could have been counted would ever have obtained it; that Miss Peters had no interest, and if she had had any, it should have been given to those who were entitled to it, who were, he says, the heirs, grantees and assigns of Harrison. It is most obvious that the defendant, so far from being entitled to protection as a *bona fide* purchaser, has no claim whatever to the favorable consideration of this court.

He, residing at Binghamton, in the state of New York, seeks out, with great pains and diligence, the heir at law of Peters; bargains with her for a conveyance of all her right as heir in any property of her father in this state; conceals from her and her counsel his design in obtaining such conveyance until after the deed was delivered, and, until then, absolutely refuses to give even any intimation as to what the estate is of which he is desirous of obtaining title; vaguely, at first in his offer, hints at litigation to recover property, offering to make part of the compensation to be given to Miss Peters conditional on success therein, but only after obtaining the conveyance discloses to her counsel his purpose, which was to disturb the holders of the property under the Harrison title, and, if possible, recover the property from

Wanner *v.* Sisson.

them for his own advantage. He has none of the character-istics of a *bona fide* purchaser. Nor does he, in his answer, claim to be such. He is obviously a volunteer—a mere speculator. He had notice of the claim of the persons who were in possession. If they were tenants, he had notice of the claims of those under whom they claimed. The rule is, that the occupancy of land is equivalent to notice to all persons dealing with the title, of the claim of the occupant. If a tenant has even changed his character by having agreed to purchase the estate, his possession amounts to notice of his equitable title. *Sugd. on Vend.* (11 Am. ed.) 543; *Havens* v. *Bliss*, 11 *C. E. Gr.* 363, 370.

The mere fact that the defendant knew or was informed that the estate was not in the actual possession of the person with whom he contracted, and that that person could not transfer the possession and ownership at the same time, was sufficient to put him on inquiry, and to charge him with notice that there were interests as to the extent and terms of which it was his duty to inquire. *Taylor* v. *Stibbert*, 2 *Ves. Jr.* 440; *Baldwin* v. *Johnson, Sax.* 441; *Havens* v. *Bliss, ubi sup.* How much more is he chargeable with notice of the equitable claims of the persons in possession of the property when he contracts with a person who not only has no possession, but does not claim to be entitled to it, and not only so, but actually disclaims having any title whatever to the property.

There will be a decree reforming the record, and, if need be, the deed from Peters to Harrison, by inserting the words "and his heirs" in the granting part of the deed. The injunction will be made perpetual. The defendant will be decreed to convey to the complainants any interest he may have acquired in their property by the deed from Miss Peters to him, and he will be also decreed to pay the costs of this suit.