Essex County Court of Common Pleas.

JOHN WATTS, PETITIONER-APPELLEE, v. CITY OF NEWARK, RESPONDENT-APPELLANT.

Decided July 1, 1947.

For the petitioner-appellee, *Joseph A. Fuerstman*.

For the respondent-appellant, *Thomas L. Parsonnet* (by *Michael Breitkopf*).

HARTSHORNE, C. P. J. This appeal lies from a determination in the Compensation Bureau, awarding the employee, John Watts, petitioner-appellee, a subsequently increased disability, as provided for by the statute, *N. J. S. A.* 34:15–12, totaling 100%, after a previous award of original disability of 25%. The prime issues are (1) of law—as to whether the record upon which this appeal is based, includes the entire transcript of evidence taken by the Bureau, not on the hearing as to increased disability, but on the original hearing, and (2) whether, in the light of the evidence lawfully before this court—including the above original hearing evidence, or not, as this court may determine—the petitioner now has or has not, a 100% compensable disability. As to the latter question, the issue more specifically is, whether petitioner's compensable disabilities have now, in addition to their objective effects, resulted also in a severe psychoneurosis and conversion hysteria, as claimed by him, or whether he is a pure malingerer, as claimed by respondent.

Since the decision of the second question, to some extent, depends upon the determination of the first, we proceed to the consideration of this question—whether the evidence, upon which the original award was made, is a part of the evidence to be considered on the hearing as to increased disability, both originally and on appeal. On this point, the research of industrious counsel has revealed no precedent.

In the first place, the statute requires this appeal to be "based exclusively on the transcript of the record and testimony." *R. S.* 34:15–66; *N. J. S. A.* 34:15–66. The statute, after previously providing at length for the procedure upon the original compensation petition, makes provision, by an entirely separate subsequent section, *R. S.* 34:15–27; *N. J. S. A.* 34:15–27, for a proceeding unknown to the common law,

to ascertain whether the disability previously adjudicated "has subsequently increased * .* * [or] has diminished." It further provides a different statute of limitations upon the bringing of these proceedings for a subsequently diminished disability than for those as to a subsequently increased disability. These all point to the legislative intent that these novel proceedings, instituted by entirely separate petitions for increased or diminished disability, are separate from the proceedings culminating in the original basic award. And such has apparently been the viewpoint of our highest court, which has said, "A petition for compensation for augmented incapacity, while predicated on the original judgment, initiates what is essentially a new proceeding based on a new factual situation." *Drake* v. *C. V. Hill Co.*, 117 *N. J. L.* 290; 187 *Atl. Rep.* 637. It is furthermore clear that an original award of compensation, unappealed from, is *res judicata* of the rights of the parties as of that time. The determination and rule for judgment entered by the Bureau thereon, states the adjudicated *res*. Such determination and judgment has resolved the contradictions normally appearing in the underlying testimony, and can alone be looked to thereafter as stating the true facts at that time. As stated by our upper courts, "The formal determination or final judgment of the commissioner is, by the statute, the repository of his ultimate findings" (*Tucker* v. *Beltramo,* 117 *N. J. L.* 72; 186 *Atl. Rep.* 821; *affirmed,* 118 *N. J. L.* 301; 192 *Atl. Rep.* 62), as of the time of the hearing. The determination and judgment entered thereon constitutes the final findings of facts and the law of the case, just as does a judgment at common law.

The novel proceeding for subsequently increased or diminished disability must, of course, be based thereon. It is from this fixed base that the calculation must be made as to whether subsequently there has been an increase or decrease of disability. This increase or decrease cannot be determined by reference to the normally contradictory testimony taken at the original hearing. To do so would both result in confusion, and would in fact result in letting the tribunal now passing on a subsequent increase or decrease, redetermine the original

disability. This would be contrary to the settled principle that the determination of such original disability is final on that point, if not appealed from, as seen above. Hence, the evidence taken on the original award is not *ipso facto* part of the record on the procedings as to subsequently increased or decreased disability.

Indeed, this conclusion closely accords with the settled rule that testimony given by a witness on one trial will never be received as affirmative evidence at a subsequent trial, unless (1) the issues are the same and (2) the witness has meanwhile become peculiarly unavailable. 3 *Wigmore (2d ed.)* 1402, § 1386; *Sloan* v. *Somers,* 20 *N. J. L.* 66; *Berney* v. *Mitchell,* 34 *Id.* 337; *New York Railway* v. *Haring,* 47 *Id.* 137. Neither of such conditions prerequisite exist here.

But this does not mean that the evidence taken on this original award is to be entirely disregarded. Far from it. For statements made by a witness thereat, if contradictory in fact to statements made by the same witness at the hearing on increased or decreased disability, may of course be properly used to affect the credibility of such witness, on well settled principles. Ordinarily, in order to introduce this prior testimony for that purpose, such contradictory statements should be first called to the attention of the witness, and used thereafter only if denied. *Union Square* v. *Simmons,* 42 *Atl. Rep.* 489. And even when thereafter used, such prior testimony must be properly authenticated by the stenographer. *State* v. *Contarino,* 91 *N. J. L.* 103; 102 *All. Rep.* 872. Since the evidence at the hearing upon which the original award was based, was not used in this case to affect the credibility of witnesses, but is now improperly presented as affirmative evidence on this hearing on increased disability, it cannot be considered as a basis for decision. *Helminsky* v. *Ford Motor Co.,* 111 *N. J. L.* 370; 168 *Atl. Rep.* 420.

We turn to the meritorious question, of whether the employee has suffered increased disability subsequent to the original award, or whether, on the contrary, he is a malingerer. In outline, the admitted facts are that the employee suffered four separate and distinct accidental injuries while in respondent's employ, all of these injuries affecting the region

of his lower back, one after another. These occurred December 18th, 1936, September 6th, 1937, October 17th, 1940, and November 7th, 1941. They were all tried together, and resulted in a single award of 25% partial permanent disability, consisting largely, upon the basis of both orthopedic and neurological findings, of a lumbar-sacral and "sacro-iliac sprain involving the nerve roots" as well as "accelerating and aggravating underlying arthritic conditions." This award was entered April 2d, 1943.

Four years later, March 28th, 1947, the award for increased disability, now appealed from, was entered, finding the man 100% disabled, this additional disability being largely found to be a severe conversion hysteria or psychoneurosis of a post-traumatic nature. Substantial testimony, both lay and medical, the latter being both orthopedic and neurological, was presented by the employee. Orthopedic and neurological testimony was also presented by respondent. To detail this evidence herein would unduly extend this opinion. Suffice it to say that, if the facts testified to are true, the present award of 100% total permanent disability is amply justified, and *vice versa*.

Respondent contends the man to be a malingerer, and that he and his lay witnesses are not telling the truth as to his situation, and particularly his psychoneurosis, respondent relying largely upon the fact that certain of the symptoms testified to would not seem to accord with the objective findings of the doctors. But it is noteworthy that there is not a single doctor, even those presented by respondent, who is willing, upon the basis of his medical skill and knowledge, to reach the very medical conclusion which respondent asks this court to reach; *i. e.*, not a doctor will say the man is a malingerer. Furthermore, that psychoneurosis and conversion hysteria are very real and may well result from industrial accidents, is definitely settled. In *Vaccaro* v. *Walter Kidde & Co.*, 134 *N. J. L.* 491; 48 *Atl. Rep.* (2d) 393, the court found that the employee's blindness was the consequence of psychoneurosis of the conversion hysteria type, saying, "Hysterical amblyopia is well known to the science of neurology; and in the search for the cause of this employee's conceded

'industrial blindness' it is the more probable hypothesis by far." Thus, even in an eye, and similarly in other parts of the body, an hysteria may be the cause of a disabling condition, in the absence of any discernible anatomical cause. Indeed, it is the absence of apparent connection between any objective, discernible, tangible cause and the neurotic symptoms, which causes the condition to be termed as "hysteria." Thus the lack of an apparent connection between certain objective findings of the doctors and certain of Watts' present symptoms, far from proving him to be a malingerer, equally gives rise to the conclusion that he is the subject of such an hysteria as his doctors claim.

Whether a man is telling the truth, or is acting the truth, *i. e.*, whether he is a malingerer, can only be ascertained with the greatest difficulty by those who have the opportunity and the skill to observe him properly. When those who have observed him, including the physicians appearing for the respondent, are unwilling to term him a malingerer, it would be asking much of this court, which has never had the opportunity to observe him, to reach this very conclusion, in the face of the determination to the contrary of the Bureau, which did have the opportunity to observe him and hear him, and in the absence of anything in the record which *per se* indicates that he was neither telling, nor acting, the truth.

Such being the case, the award of the Bureau will be affirmed, **and** a determination may be entered accordingly.