[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 222 
The decedent, George Andricsak, was employed by National Fireproofing Corporation as a fireman. His work was performed alone in a tunnel below the ground level, some 250 feet long, 10 or 11 feet wide and about 8 feet high. In tending the fires, he used a clinker bar about 7 1/2 feet long and weighing between 30 and 40 pounds. On March 11, 1947, he reported to his superior, Walter B. Harris, that he had sustained an injury and requested an authorization for medical treatment which was given him and which read in part: "Please render bearer, George Andricsak, such medical and surgical treatment as may be necessary for injury received March 11, 1947. Subject to Workmen's Compensation Act." At the hearing, almost nine months after March 11th, Mr. Harris said that the report of an accident was given to him on the 7th, 11th or 12th, just before the decedent went to work at 2 P.M. The probability is that the date on the slip is correct since it was typed on the date when decedent made the request and while the facts were fresh in the mind of the witness. A fellow-employee, Alex Birsky, testified that on March 11th the decedent showed him that one of his testicles was enlarged to about the size of a grapefruit and was black and blue, and that decedent then told the witness that he was hit there by the bar. Another employee, Andrew Dunch, testified that on March 11th decedent was limping and that decedent showed him the condition of his testicle. Dr. McCormick, the treating physician to whom decedent was sent by the employer, testified that decedent told him that he was hit on the scrotum by an iron bar and that the incident occurred at the plant. It is not altogether clear whether the statement to Dr. McCormick was made on the 11th or 12th *Page 223 
of March. The decedent was admitted to the hospital about 4 P.M. on the 12th, was operated upon for a hydrocele on the 13th and died on the 15th. Decedent's widow testified that on a Sunday, which was several days prior to March 11th, she, for the first time, noticed the discoloration and enlargement of the testicle. We do not attach much significance to this discrepancy in dates and agree with the finding of the Deputy Commissioner that the injury was sustained on March 11th. There was medical testimony of a causal relationship between the trauma and the death and none to the contrary. The medical evidence was predicated upon the assumption that decedent had been struck in the scrotum by an iron bar. The Deputy Commissioner found that the decedent sustained an accident arising out of and in the course of his employment on March 11th. On appeal, the County Court held that petitioner had not borne the burden of proving an accident. In reversing the award, the County Court followed the general rule that a statement made by an injured employee to his physician for the purpose of treatment and diagnosis, such as statements relating to his symptoms and feelings, were admissible but that statements as to the cause of the injury or the place where it occurred were inadmissible. Helminsky v. Ford Motor Co.,111 N.J.L. 369 (E. A. 1933). The County Court further said that the statements of the decedent were too remote in time to be of a part of the res gestae.
In Hunter v. State, 40 N.J.L. 495, 538 (E. A. 1878), Chief Justice Beasley adopted Wharton's definition that: "`Theres gestae may therefore be defined as those circumstances which are the undesigned incidents of a particular litigated act, which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist of speeches of any one concerned, whether participant or bystander; they may comprise things left undone as well as things done. Their sole distinguishing feature is that they should be the necessary incidents of the litigated act; necessary, in this sense, that they are part of the immediate preparations for, or emanations of such act, and are not produced *Page 224 
by the calculated policy of the actors.'" The opinion then discusses the requirement that the act and the statement be contemporaneous and quotes from Rouch v. Great Western R.R.Co., 1 Q.B. 60, "`The principle of admission is, that the declarations are pars rei gestae, and therefore it has been contended that they must be cotemporaneous with it; but this has been decided not to be necessary, on good grounds; for the nature and strength of the connection with the act are the material things to be looked to; and, although concurrence of time cannot but be always material evidence to show the connection, yet it is by no means essential,'" and Chief Justice Beasley added the comment that "In the case now under consideration, these declarations are so naturally, and therefore strongly, associated with the act in contemplation that, in my estimation, the most exact cotemporaneousness of the two things would give no additional force to the connection between them. There is nothing in the case to countenance the notion that any change of purpose occurred between the time of the expression of such purpose and the execution of it, so, as there is no extraneous interference, the disclosure of the intention and its performance may be said to be, within the meaning of the authorities, one entire transaction." These excerpts from Hunter v. State, supra, are quoted to show that more than seventy-five years ago the courts recognized that the element of time between the act and the declaration was not of itself the controlling feature but rather that the controlling feature is that the declaration and the act be so naturally and strongly connected as to impress upon the statement the imprint of truth. The cases run the gamut on the relative time between the act and the declaration. The strict rule is exemplified by Rex v. Bedingfield, 14 Cox C.C.
(Eng.) 341; 14 Am. Law Rev. 817, the more liberal rule byTravellers' Ins. Co. v. Mosley, 75 U.S. 397; 19 L.Ed. 437
(U.S. Sup. Ct. 1869). Many of the New Jersey cases will be found collected in Robertson v. Hackensack Trust Co., 1 N.J. 304
(Sup. Ct. 1949), and in the concurring opinion in which the case against strict adherence to the rule against hearsay evidence is ably stated and *Page 225 
discussed. In Kelly v. Pitney, 98 N.J.L. 773 (E. A.
1923), in dealing with the subject of res gestae the court adopted Dean Wigmore's rule that "the statement must be of a present existing state of mind and must appear to have been made in a natural manner and not under circumstances of suspicion." In commenting upon this rule in Robertson v. Hackensack Trust Co.,supra, Mr. Justice Case said: "It is clear that the word `natural' was there used, as it was in the Hunter case, supra,
in antithesis to the words `artificial' and `designed' and that the phrase `under circumstances of suspicion' has the meaning communicated by Chief Justice Field of the Massachusetts Supreme Judicial Court in Commonwealth v. Trefethen, 1892,157 Mass. 180, 31 N.E. 961, 966, 24 L.R.A. 235, in this language: `and the declaration, if made, was made under circumstances which exclude any suspicion of an intention to make evidence to be used at the trial.'"
Let us now consider the circumstances as they existed when the decedent made to his co-worker, Birsky, and to Dr. McCormick the statements that he was struck by the iron bar. He was then confronted with the physical fact that one of his testicles was swollen to the size of a grapefruit or orange. The condition was alarming, indeed terrifying, and it seems to us that the first and continuing thought in his mind would be the advisability of procuring medical aid. The fact that decedent applied to his superior for authorization to see Dr. McCormick seems to us a natural thing to do and wholly free from any circumstance of suspicion. It was the normal action that the law's hypothetical "reasonable man" would be expected to take under the same circumstances. Nor do we see that his behavior in showing the condition to his co-worker and telling him that he was struck in the scrotum by the bar was either artificial or designed. As was said in the case of Commonwealth v. Cupps, 43 A.2d 545
(Penna. Super. Ct. 1948), "The (res gestae) declarations are offered for their truth which is best guaranteed when the utterances are made in connection with a startling event by one still laboring under the stress of the nervous excitement produced *Page 226 
by it." This guide finds support in reason and justice and is embodied in the Model Code of Evidence of the American Law Institute; Rule 512 of which reads: "Evidence of a hearsay statement is admissible if the judge finds that the hearsay statement was made (a) while the declarant was perceiving the event or condition which the statement narrates or describes or explains, or immediately thereafter; or (b) while the declarant was under the stress of a nervous excitement caused by his perception of the event or condition which the statement narrates or describes or explains."
Under the circumstances of this case we are of the opinion that the decedent made the statements under the stress of a nervous excitement caused by the condition which his utterances explained and therefore they were admissible as part of the res gestae
and established an accident within the meaning of the statute.
The judgment under appeal is reversed.