Welch, petitioner-appellant in this workmen's compensation appeal proceeding, a court attendant, *Page 424 
attached to the Essex County Courts, was admittedly totally and permanently incapacitated by a cancer of the chest. This soon spread throughout his body, causing his death April 14, 1948. He filed a petition for compensation for his primary total incapacity, alleging that the cancer was aggravated by a blow he received in his chest December 23, 1946, when, while he was in his occupation as driver of the prison van, he was hit in the chest and knocked down by the swinging open of the heavy front door of the van. Before the hearing on this petition, he had become bedridden and in extremis, his testimony as to the accident and his symptoms thereafter, upon the basis of which the medical testimony was given, having been taken on deposition at his home. The court order, permitting the taking of this testimony, provided that it was to be "taken for all purposes as though it had been taken in open court."
Shortly thereafter, he died from this cancer. Thereupon the requisite petition was filed by his wife, as administratrix of his estate and as mother of his daughter. Since the main issue in both causes — the compensability of the cancerous condition, which first totally incapacitated him, and then killed him — was the same on both petitions, the causes were consolidated for hearing. The basic issue at this hearing was, of course, the medical fact question, whether this cancerous condition was aggravated by this accident, which clearly arose "out of and in the course of his employment." To this accident the only eye witness was the deceased petitioner, who described the occurrence in detail on his deposition under lengthy cross-examination. The other witnesses saw him pick himself up off the ground, but did not see the blow that knocked him to the ground.
As to his symptoms, it is undisputed that the petitioner was a particularly robust individual, apparently in perfect health previous to the above accident. He had had an earlier blow to his chest February 8, 1945, when, while driving the Essex County prison van in a snowstorm, he was thrown against the steering wheel, which hit him in the center of his chest also. But from this relatively minor *Page 425 
injury, he recovered shortly, without any apparent continuing difficulty.
The above accident, in December, 1946, caused black and blue marks "all over my chest, and fractured a right lower rib." Within a week or two after this accident, he had a "terrific pain in my chest," which ran up from his left hip to his neck. He started spitting up blood within a couple of weeks after the accident. The physician in charge of the court attendants, Dr. Hanteman, treated him at first only for the fractured rib. However, when the symptoms, instead of abating, continued to increase, Dr. Martland, the Essex County Medical Examiner, was called in, and when a bronchoscopy was done, it was then for the first time suspected, in June, 1947, that Welch had a serious growth in his lung.
Thereupon, Welch was sent to the Memorial Hospital, in New York, where he was examined July 3, 1947, by Dr. Pool, one of the head men. Dr. Pool diagnosed the situation as critical, operated on Welch's left chest July 18th, and found a "mass in the immediate mid-portion of the left lung * * * diagnosis of lung cancer." The operation disclosed, however, that the cancer was too far advanced for removal, due to "widespread dissemination of the cancer throughout his body," and thereafter petitioner died from oatcell cancer April 14, 1948.
Such are the basic facts, lay and medical, on which this cause depends. The issue — one of medical fact — is whether this cancer, which admittedly pre-existed the accident of December, 1946, and which for the first time became known to Welch, and caused him increased suffering, immediately thereafter, was aggravated by this accident, or whether this suffering, which first became patent right after the accident, was entirely disconnected therefrom, and due solely to the normal progress of the pre-existing disease.
On this medical issue, for petitioner, appear not only both treating physicians, but as a consultant, Dr. Martland, the Essex County Medical Examiner, and Dr. Reilly, an expert. For respondent, appear two experts, one of whom had not *Page 426 
seen the patient at all, another of whom had examined him but once, the day his deposition was taken.
Dr. Pool, of course, not only because of his experience, as one of the head men in the largest cancer institution in the country, but as the sole man who ever saw the cancer inside Welch's chest, is in a particularly advantageous position to advise the court as to the facts. Neither he nor anyone else considers the 1946 accident as the cause of the cancer. He says this blow was "an aggravating factor in the rapidity of growth of the lung cancer which was evidenced in March of the next year following the accident * * * the man reasonably and probably died of lung cancer, and it is my opinion that the aggravation by the trauma under the circumstances was probably under the circumstances an aggravating factor." It was his hypothesis that the "capsule or lymph node of the primary growth" was "stimulated by ripping or tearing" when Welch was "struck in the center of the chest;" that this caused "extravasation of blood or hemorrhage into the interior" of the man's body which "caused an acceleration of the growth." He of course did not see signs of this extravasation of blood, since the operation was "seven months following the trauma." In any event, he was visualizing a microscopic rupture, not one visible to his naked operating eye.
While Dr. Hanteman, Welch's original treating physician, is not a cancer specialist, it is his opinion too that the "trauma was a reasonable aggravating cause from the pre-existing condition" of cancer. He bases his answer on "clinical grounds," i.e., that while before the injury the man had been in apparent good health, immediately thereafter his symptoms rapidly increased till his death. Dr. Reilly, an expert, has the same opinion. And Dr. Martland, the Essex County Medical Examiner, says, "It is only fair to assume it [the trauma] might [have aggravated the cancer] but I don't know how you are going to prove it." Obviously, this is but Dr. Martland's well-known outspoken way of saying that you cannot demonstrate the connection, but that he considers the connection exists as a matter of sound medical theory.
Opposed to this united medical front of attending physicians, *Page 427 
both specialist and otherwise, as well as experts, respondent produces two experts only. The one of them who did not see the petitioner at all, and treats the matter wholly hypothetically, persistently adheres to the theory that no trauma could possibly affect a cancer. "Question: It is your opinion that the harder you hit a cancer the sooner you will be rid of it? Answer: I don't think it makes any difference." He also says, "I do not know of any school that has seriously advanced the argument that trauma is an accelerating factor in carcinoma." And this, despite the fact that in this very case, one of the leading physicians in the largest cancer institution in the country has just opined, that he at least is a member of such a school. The other specialist produced by respondent, who examined petitioner but once, says he is not one of those doctors that thinks that trauma never aggravates cancer. However, in the next breath he says that the trauma would cause hemorrhage or infection, and that the increased symptoms thereafter would be due, not to the aggravated cancer, but to such hemorrhage or infection. He thus apparently in part adopts Dr. Pool's theory as to the possible hemorrhage following the trauma here. And it would seem quite clear, if cancer cells were released in this hemorrhage from the originalsitus, they would more quickly spread the cancer wherever they went, and thereby aggravate the man's cancerous condition, than if they had continued pent up in the original cancerous capsule.
In short, both because of the appearance of the cancerous symptoms for the first time almost immediately after the December, 1946, accident, and because of the reasonableness and relative weight of the medical opinion presented on petitioner's behalf, it would seem that petitioner has established by the greater weight of the evidence that the accident in question did aggravate Welch's cancerous condition, and hasten his total permanent disability.
But when it comes to the consideration of this same issue in the hearing on the death case, respondent insists that the testimony given by petitioner, then deceased, on deposition, including the sole direct evidence as to the accident itself, is *Page 428 
totally inadmissible. Thus, under its theory, while the same cause obviously resulted in both the injury and the death, an award may go for the injury, but cannot even be proved as to the death — a somewhat startling, not to say unjust, result. This result, respondent contends, follows from its claim that the death petition is not derivative from the injury petition, and this despite the fact that the basic issue in both petitions is identic.
But consideration of the authorities, both in New Jersey and elsewhere, would indicate that this question of the admissibility of evidence depends upon the adjective law of evidence, not upon the identic or derivative character of the causes of action. For instance, in Wanner v. Sisson, 29 N.J. Eq. 141, the first cause of action was at law in ejectment, the second in equity on bill to quiet title. Nevertheless, the deposition of a witness in the first action, who died before the second action was brought, was held admissible. This result was reached because, despite the difference in the causes of action, and despite the fact that the identic land and the identic parties were not involved, both actions were "substantially between the same parties and for the same land," as the head-note states.
Basically, the question involves the law of evidence, and more specifically, whether the deposition is admissible under the hearsay rule. That it is so admissible, by the weight of authority throughout the country, as well as by reason, would clearly appear, and this quite regardless of the present tendency to alleviate the strict application of the hearsay rule to accord with the viewpoint of our citizens, for whom after all the law exists. [Robertson v. Hackensack Trust Co., concurring opinion by Vanderbilt, C.J., 1 N.J. 304, 309, 322. Andricsak v.National Fireproofing Corp., 4 N.J. Super. 220 (App. Div.)].
As Professor Wigmore says, "* * * the essence of the hearsay rule is a requirement that testimonial assertions shall be subjected to the test of cross-examination." [Wigmore, Evidence,3d Ed., Vol. 5, § 1362, p. 7.] "When, therefore, a statement has already been subjected to cross-examination *Page 429 
and is hence admitted — as in the case of a deposition or testimony at a former trial, — it comes in because the rule is satisfied, — not because an exception to the rule is allowed. The statement may have been made before the present trial, but if it has been already subjected to proper cross-examination, it has satisfied the rule and needs no exception in its favor." [Ibid., § 1370.] But of course, "The issue on the occasion when the former testimony or deposition was given must have been substantially the same, for otherwise it cannot be supposed that the former statement was sufficiently tested by cross-examination upon the point now in issue. * * * The situation is one that calls for common sense and liberality in the application of the rule, and not a narrow and pedantic illiberality." [Section
1387, citing cases from all over the United States, Canada and England.] "It is commonly said that the parties to the litigation in which the testimony was first given must have been the same as in the litigation in which it is now offered. But this limitation suffers in practice many modifications; and properly so, for it is not a strict and necessary deduction from the principle. * * * Thus, the requirement of identity of parties is after all only an incident or corollary of the requirement as to identity of issue. [Note the author alludes here, not to cause of action, but to issue, and as above stated `substantially the same' issue.] It ought, then, to be sufficient to inquire whether the former testimony was given upon such an issue that the party-opponent in that case had the same interest and motive in his cross-examination that the present opponent has * * *." [Section 1388.]
Note that since the test is the opportunity for cross-examination, with the same motive in the cross-examiner, the "party-opponent," it is the identity, privity, or substantial identity, of the opponent, not of the party introducing the deposition, which is essential.
The weight of authority fully supports Professor Wigmore in his above statements, not only as to the general principle, but specifically with regard to its application in workmen's compensation cases involving first a compensable injury, and *Page 430 
next a compensable death. On this exact point see IndustrialCommission v. Bartholome, 190 N.E. 193, Ohio; Travelers Ins.Co. v. Branham, 61 F. Supp. 637, Dist. of Pa.; MarylandCasualty Co. v. Lee, 165 S.W.2d 135, Texas; Hill v. AncramPaper Mills, 195 N.Y.S. 522. Standing practically alone to the contrary in these workmen's compensation proceedings is Tom ReedGold Mines Co. v. Moore, 11 P.2d 347, Arizona.
As further upholding the above principle as stated by Professor Wigmore, note the decisions in the very similar proceedings involving common law suits, first for injuries, thereafter for deaths, arising out of the same accident. Bartlett v. KansasCity Public Service, 160 S.W.2d 740, Missouri;142 A.L.R. 666 (containing an exhaustive note on the matter at p. 707);Cohen v. Long Island R. Co., 139 N.Y.S. 887; Atlanta W.P.R.R. v. Venable, 67 Ga. 697; Lake Erie W.R. Co. v.Huffman, 97 N.E. 434, Indiana; Hartis v. Charlotte ElectricR. Co., 78 S.E. 164, North Carolina; St. Louis SouthwesternR. Co. v. Hengst, 81 S.W. 832, Texas; Walkerton v. Erdman,
23 Can. S.C. 352. To the contrary there appear only Murphy v.New York Cent. H.R.R. Co., 31 Hun. 358, obviously overruled by the later New York case cited, supra; Arsnow v. Red Top Cab,292 P. 436, Washington.
 A fortiori, should our courts not hesitate to apply this common-law rule in accordance with the weight of authority, in view of the well-settled principle that the Workmen's Compensation Act must be given a liberal construction, as a remedial statute, and of the further principle that the hearing proceedings in general are not to be "bound by the rules of evidence." [R.S. 34:15-56.]
Reason reaches the same result. In the first place, looked at as it is, as purely a question of evidence, the deposition of a witness, taken under cross-examination, is just as much hearsay, and no more, when produced before the jury in the action involving personal injury for which it was taken, as it is in the later action involving the death following such injury. In either case the written record, proven theoretically by the stenographer who took the testimony on deposition, is *Page 431 
hearsay to that extent, and to that extent only, when read to the court or jury, whether the court or jury sat in the first or the second action. While such a deposition, if not taken down stenographically, but reported from mere recollection, might well be subject to some question as to its credibility, no one would think of objecting, regardless of the statute, to the credibility of such deposition, when taken down stenographically and read in the case in which it is taken.
The objection to the admission of such deposition in the second proceeding thus lies, not at all to the fact that it was taken out of court, and that the witness is not produced, but to the question of whether the basic test of proper cross-examination, as alluded to by Professor Wigmore above, has been applied, so as to render the deposition admissible as the best evidence, in satisfaction of the hearsay rule. For this cross-examination to be proper, it must have been had by either the same party, or by one, whose motive for cross-examining would make him apply the same test of cross-examination with the same fervor as the later party would have. And of course this equally calls for the fact that, not the technical cause of action, but the issue as to which the deposition is taken, must be in substance the same, so that the cross-examination may go to the same point.
In the present cause, the person who cross-examined in both proceedings is identic, the County of Essex. So no question can be raised on that score. Further, the point involved in the evidence given on Welch's deposition, was whether there was an accident, and whether this accident aggravated the cancer, which totally disabled, and finally killed, him, as judged by his symptoms. The issue involved on such deposition was thus substantially identic.
Such being the case, both on reason and authority, Welch's deposition, taken while he was in extremis, and within but a few months, if not weeks, of his death, was clearly admissible in the death proceedings, as well as in those for his preceding injuries.
The cases cited to the contrary by respondent are inapplicable. In First Nat. Bank of Toms River v. Levy, 125 N.J. *Page 432 L. 458, where the transcript of evidence of a third party witness in an unnamed Orphans Court proceeding was refused admission in a later action at law, there as no proof whatever that in the two causes there was the necessary substantial identity of parties and issues. In Lupino v. Sestanovich,115 N.J.L. 217, in the first place, the witness whose deposition was refused admission, had not been cross-examined at the first trial. In the next place, a new opponent thereto had been added at the second trial. In Sokobin v. Ornstein, 108 N.J.L. 304, the deposition, whose admission was refused, had been taken, not for the purpose of trial, but merely to hold the defendant in the first proceeding on a capias before trial. Such testimony would of course not be admissible as substantive proof, even in the first trial.
Of course, the New Jersey statutes (R.S. 2:97-14, 15), permitting the introduction of depositions in case of a retrial of the same action, are not intended to be exclusive. The courts of this state have repeatedly held that evidence, given at a former trial, may be used in a later proceeding, whether the cause of action is the same or not, if the witness has meanwhile died, become insane, or by reason of physical disability of a permanent character, is unable to be examined. [Wanner v.Sisson, supra; Watts v. Newark, 25 N.J. Misc. 402.] In fact this principle has been liberally adopted in the new court rules on the "Use of Depositions" [Rule 3:26-4], which, so far as pertinent, is as follows: "(c) The deposition of a witness, whether or not a party, may be used by any party for any purpose against any other party who was present or represented at the taking of the deposition or who had due notice thereof, provided the court finds: (1) that the witness is dead * * *." Indeed, the Federal rules, the predecessor of the New Jersey rules, have been specifically construed to authorize the use of the deposition of a plaintiff, taken for a personal injury case, on his death case, instituted after his decease by his widow. Mid-City Bank TrustCo. v. Reading Co., 3 F.R.D. 320 (D.C.N.J.).
While these court rules do not control workmen's compensation hearings, since the Bureau is not a court [Mulhearn *Page 433 v. Federal Shipbuilding Dry Dock Co., 66 A.2d 726], the legal philosophy of the situation is equally applicable.
In view of the denial of compensation by the Bureau in the first proceedings, where the depositions were admitted, it would be useless to remand the proceedings to the Bureau, in order to have the same evidence admitted in the death proceedings, consolidated for hearing therewith. A determination may be accordingly entered in favor of the petitioners in both proceedings, for total permanent disability in the one, and for compensation for death in the other. *Page 434