45 N.J. Super. 507 (1957)
133 A.2d 353
ROBINSON-SHORE DEVELOPMENT CO., A CORPORATION, PLAINTIFF-RESPONDENT,
v.
WILLIAM R. GALLAGHER AND CATHERINE GALLAGHER, HIS WIFE, ET ALS., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 27, 1957.
Decided June 20, 1957.
*508 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. M. Milton Singer argued the cause for appellants (Mr. Paul J. Farley, attorney; Mr. Julius Waldman, of counsel).
Mr. Albert B. Melnik argued the cause for respondent (Messrs. Hermann, Melnik and Lowengrub, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
This is an appeal from a judgment of the Superior Court, Chancery Division, in an action to quiet the title to certain property declaring plaintiff's title thereto "to be good and free from any claim, estate, interest, right in, or lien or encumbrances" by any of the defendants. The property comprises some 357 acres and is referred to as an "island" off the coast of Ocean City, in Cape May County, although by accretion it has come to be joined to the mainland.
*509 The judgment was previously before this court and a remand was granted for the trial court to consider the legal effect of four recorded instruments and to determine whether they cured any defect that may have existed in defendants' title. The trial court made its determination that the four recorded instruments afforded no basis of title in the defendants and confirmed the judgment previously rendered in favor of the plaintiff. Robinson-Shore Development Co. v. Gallagher, 43 N.J. Super. 430 (Ch. Div. 1957). Appeal is again taken and the entire case is now before us for consideration.
The facts and contentions are fully presented in Robinson-Shore Development Co. v. Gallagher, 41 N.J. Super. 324 (Ch. Div. 1956). For the purpose of this opinion, however, we summarize the pertinent facts as follows: Somers C. Godfrey became vested with the title to the island in question by deed dated May 30, 1842. In 1854 a judgment creditor of Godfrey levied and sold the premises at execution sale to Lemuel H. Hopkins. From Hopkins, conveyance was made to Emma Bourgeois and later by mesne conveyances to plaintiff.
Prior to the 1854 execution sale, however, Godfrey had mortgaged the island and, as the mortgage had been duly recorded prior to the sale, the purchaser at the execution sale took title subject to the mortgage. This mortgage was subsequently assigned to Martha Ann Gandy, who upon her marriage became Martha Ann Blakeman. In 1897 Mrs. Blakeman, claiming to have sufficient title to the island to make a conveyance by virtue of entry under default in the mortgage and continuous possession since 1860, entered into a contract to sell it to John J. Gandy, Charles G. Miller, and David P. Cresswell. Thereafter Miller assigned to one John A. Higgons his one-third interest in the contract, and Gandy similarly assigned his interest to an agent of the Ocean City Association. At the instance of the purchasers Mrs. Blakeman initiated a suit in the former Court of Chancery to quiet the title to the property, joining as a defendant Emma Bourgeois who *510 claimed her title under the 1854 execution sale to Hopkins. Blakeman v. Bourgeois, 59 N.J. Eq. 473 (Ch. 1900). In that action Bourgeois denied that the plaintiff was in peaceable possession of the island and, hence, that she was a proper party to maintain the action. Additionally, she asserted her claim to a superior title. Vice-Chancellor Grey concluded that Blakeman was in peaceable possession, but no decree was ever entered thereon and no further proceeding in the cause was had in equity or at law on the question of title.
Independent of her contract of sale, Mrs. Blakeman entered into separate negotiations with the Ocean City Association and, on May 31, 1899, assigned to it all her right, title and interest in the island.
In 1903 the Ocean City Association filed a bill of complaint in the Court of Chancery for cancellation of Mrs. Blakeman's first contract and for specific performance of its independent agreement of assignment. The court refused to order cancellation of the original contract, but rather directed in effect that it be specifically enforced. Ocean City Association v. Cresswell, 71 N.J. Eq. 292 (E. & A. 1906). Thus, each of the three purchasers under the original contract, of which Ocean City Association was one by assignment, took a one-third interest in Blakeman's claimed title. Subsequently, Ocean City Association acquired Cresswell's interest, leaving outstanding but a one-third interest in Higgons, the assignee of the Miller one-third interest.
To further complicate matters, in addition to this two-thirds interest under the Blakeman title, Ocean City Association also acquired the interest which initially stemmed from the 1854 execution sale to Hopkins. Thus, at this juncture Ocean City had complete title, except for the outstanding Higgons' interest.
Thereafter, on November 30, 1925, Higgons conveyed his one-third interest to one Kathryn M. Connolly who, on the same day, executed and delivered to Higgons a purchase money mortgage. On the following day Ocean City Association by deed dated December 1, 1925 conveyed its interest to Kathryn M. Connolly. She, in turn, on the same *511 date conveyed the interests thus acquired to Southern Garden, Inc., from whom the present plaintiff took title by deed dated June 15, 1955.
Upon default of the mortgage payments by Miss Connolly, Higgons initiated foreclosure proceedings joining Southern Garden, Inc. as a party defendant. At the foreclosure sale Higgons purchased the mortgage interest, which by mesne conveyances has now been acquired by the defendant herein, Gallagher.
To summarize, plaintiff presently holds the entire interest acquired under the 1854 execution sale from Godfrey and two-thirds of the interest devolving from Mrs. Blakeman's possession under the mortgage outstanding at the time of the execution sale; and defendants Gallaghers hold the remaining one-third interest under the mortgage. Thus, the present suit projects as its principal issue the question whether Gallaghers' one-third interest under the mortgage still survives and, if so, whether it is superior to plaintiff's interest. The trial court found that it does not, therefore the defendants appeal.
On this appeal defendants contend, firstly, that the determination in Blakeman v. Bourgeois, supra, constituted a final adjudication of peaceable possession by Mrs. Blakeman under a claim of ownership, and that the failure to enter a formal decree in that suit does not render this determination a nullity. We need not consider what effect such failure had for, as we have previously noted, the court in that case determined merely the preliminary issue that at the time of trial Blakeman was in peaceable possession and hence was a proper party to bring the action.
In his reported opinion Vice-Chancellor Grey stated (59 N.J. Eq., at page 479):
"The evidence submitted sufficiently shows a peaceable possession under a claim of ownership by the complainant, and that being the only question now under consideration, a decree will be advised that the complainant has established that jurisdictional fact, and is therefore entitled to bring this suit * * *."
*512 Since nothing else was settled by that suit, even if we should find the determination there reached to be imbued with finality, without regard to its interlocutory and perhaps nonappealable nature, it is clear that defendants cannot rely upon it to establish title. See Scott, "Collateral Estoppel by Judgment," 56 Harv. L. Rev. 1, 15 (1942); "Developments in the Law  Res Judicata," 65 Harv. L. Rev. 818, 846 (1952); Restatement, Judgments § 41, p. 161 (1942). We conclude, therefore, that Blakeman v. Bourgeois, being limited in its determination to the issue of peaceable possession, is not res adjudicata as to the issue of title.
Defendants further contend that the decree in Ocean City Association v. Cresswell, supra (71 N.J. Eq. 292), the second suit involving the island here in question, affirmed Mrs. Blakeman's title to the island. We cannot agree. While the court in that case ordered specific performance of the contract by which Mrs. Blakeman agreed to sell the island, it made no pretext of passing upon the sufficiency of her title. In a vendee's suit for specific performance, a decree in his favor is not tantamount to a determination that a clear title had been vested in the vendor, for the decree merely compels conveyance of the interest contracted for, or, if the vendor is not vested with such interest, then the court may decree conveyance of whatever interest in the property the vendor has, with or without an abatement in the purchase price. Hughes v. Hadley, 96 N.J. Eq. 467 (Ch. 1924); Maturi v. Fay, 96 N.J. Eq. 472 (Ch. 1924), reversed on other grounds on rehearing, 98 N.J. Eq. 377 (E. & A. 1925).
More difficult of disposition is the defendants' contention that the transcript of the testimony taken in the Blakeman case is here admissible. Underlying all questions of admissibility are the inquiries whether the evidence offered sheds any light on the issues in controversy and, if so, whether fundamental concepts of fairness nevertheless require its exclusion. Rules of exclusion should not stand as arbitrary barriers to a full disclosure of relevant matters. We have reviewed the transcript taken in the Blakeman case, *513 a copy of which has been made part of the record, and we find that it is relevant to the extent that it tends to establish that prior to 1897 Mrs. Blakeman was in possession of the island for almost 40 years during which time there were no payments made on the mortgage she held by assignment. Moreover, the transcript of the testimony is apparently the only proof available to establish this possession. But does fairness permit this testimony to be admitted as evidence in the present suit? It is said that with regard to the admissibility of testimony taken in prior proceedings, our courts have followed the orthodox "same parties, same issue" rule, i.e., that the parties and the issues must be the same in the second action as those in the first, if the testimony is to be received in evidence. Report of the Committee on the Revision of the Law of Evidence (May 1955) p. 126; Lupino v. Sestanovich, 115 N.J.L. 217 (E. & A. 1935); First National Bank of Toms River v. Levy, 125 N.J.L. 458 (Sup. Ct. 1940). Departures, however, from the "same parties" requirement are discernible in the cases. See, e.g., Wanner v. Sisson, 29 N.J. Eq. 141 (Ch. 1878), where the parties to the two actions were in privity of interest; and Welch v. County of Essex, 6 N.J. Super. 422 (Cty. Ct. 1949). In the latter case the court observed that the essential inquiry should be whether the proffered testimony has been "subjected to the test of cross-examination." 5 Wigmore, Evidence (3d ed.), § 1362, p. 7. And for this test to be satisfied "The issue on the occasion when the former testimony or deposition was given must have been substantially the same, for otherwise it cannot be supposed that the former statement was sufficiently tested by cross-examination upon the point now in issue." Wigmore, supra, § 1387, p. 83. Further, while "it is commonly said that the parties to the litigation in which the testimony was first given must have been the same as in the litigation in which it is now offered * * * this limitation suffers in practice many modifications; and properly so, for it is not a strict and necessary deduction from the principle. * * * Thus, the requirement of identity of parties is *514 after all only an incident or corollary of the requirement as to identity of issue. It ought, then, to be sufficient to inquire whether the former testimony was given upon such an issue that the party opponent in that case had the same interest and motive in his cross-examination that the present opponent has; * * *." Wigmore, supra, § 1388, p. 95; Uniform Rules of Evidence, Rule 63(3).
Even under this test which looks to the interest and motive of the cross-examiner, however, defendant's contention of admissibility must fall. For, as previously noted, in the Blakeman suit the issue was the preliminary question of "peaceable possession"  it was not title. This was in accordance with the practice set forth by Vice-Chancellor Pitney in Beale v. Blake, 45 N.J. Eq. 668 (Ch. 1889), and more recently restated by our Supreme Court in Toth v. Bigelow, 1 N.J. 399 (1949), that:
"When the jurisdiction of Chancery is disputed, in an action to quiet title under the statute, R.S. 2:76-2, et seq. [N.J.S. 2A:62-1 et seq.], it is the practice to bring the matter on for preliminary hearing upon that question alone. Sheppard v. Nixon, 43 N.J. Eq. 627, 632 (E. & A. 1887); Fittichauer v. Metropolitan Fire Proofing Co., 70 N.J. Eq. 429, 433 (Ch. 1905); Kocher & Trier, New Jersey Practice and Precedents, Sec. 316, p. 941 (1924). At such hearing the statutory requirement is satisfied if the complainant proves peaceable possession of the land in question, a claim of ownership thereof by himself, a denial or disputation of his title or any part thereof or interest therein by any other person claiming to own the same and that no suit is pending to enforce or test the validity of such adverse title or claim. * * * Upon proof of these elements the bill will be retained for disposition upon the merits."
Thus, while the determination of "peaceable possession" is a prerequisite to the testing of title, that determination is customarily made at a separate hearing  which practice was followed in the Blakeman suit  entirely apart from the issue of title. The testimony solicited at that hearing was not admissible at the subsequent hearing on title. Cf. Sokobin v. Ornstein, 108 N.J.L. 304 (E. & A. 1932). Thus, the interest and motive of the cross-examiner were not the same as they would be in the present action, and, in fairness, the evidence must be excluded.
*515 The defendants' last point relates to the matters considered by the trial court on the remand to consider the legal effect of certain instruments of record and whether these "proofs cure any defect that may have existed in defendants' title." It is defendants' contention that even if it be found that they have failed to establish a legally cognizable one-third interest in their predecessor in interest, Higgons, prior to Higgons' conveyance to Miss Connolly, that failure was cured when Higgons reacquired the property at the foreclosure sale. This, because after the Higgons conveyance but before the foreclosure sale Miss Connolly had acquired all the outstanding interests in the island. Can it be said that the subsequently acquired title of Miss Connolly from the Ocean City Association inured to the benefit of Higgons, who held but a purchase money mortgage? We think not.
The trial court held that
"A purchase money mortgage conveys only such interest as the mortgagor [purchaser] obtained and the mortgagee [vendor] is restricted to a lien on such interest as security for the payment of the purchase price thereof. * * * that even though a deed and the purchase money mortgage arising out of a simultaneous transaction contain covenants of title, the mortgagee is not entitled to the benefit of a lien on an after acquired title, but is restricted to the title he conveyed as security for the payment of the purchase price. It follows that on this theory defendants obtained only such title as Higgons had on the conveyance to Connolly. This title has heretofore been held a nullity. It would be inequitable to permit the mortgagee to take advantage of his own breach of the warranty."
We agree. See 36 Am. Jur., Mortgages, sec. 256, p. 818 (1941); 59 C.J.S. Mortgages § 185, p. 239 (1949); Annotation, 26 A.L.R. 173 (1923); Smith v. De Russy, 29 N.J. Eq. 407 (Ch. 1878).
Both the judgment and the order of affirmance entered subsequent to the remand are affirmed.