(No. 25559.— ▮▮▮▮▮▮▮▮▮)

THE MACON COUNTY COAL COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(REBECCA SMITH, Plaintiff in Error.)

*Opinion filed June 14, 1940—Rehearing denied October 2, 1940.*

ROBERT H. ALLISON, for plaintiff in error.

MONROE & ALLEN, (RALPH J. MONROE, of counsel,) for defendant in error.

Mr. JUSTICE WILSON delivered the opinion of the court:

Rebecca Smith, in an application filed with the Industrial Commission, charged that Bart Smith, her husband, while employed by the Macon County Coal Company, suffered accidental injuries resulting in his death. The applicant asked the adjustment of compensation for the injury. It was stipulated that Smith's injuries arose out of and in the course of his employment. The arbitrator found that $463.60, the total temporary compensation owing had been paid by the employer; that Smith's death was due to cancer, and not the accident, and denied compensation. On review, the commission found that Smith's death resulted from his accidental injuries, and awarded his widow $12.21 per week for 289 weeks from the date of his death, and $7.71 for one week thereafter. The circuit court of Macon county reversed the decision of the commission. Upon the petition of the applicant, this court has granted a writ of error, and the record is submitted for further review.

On January 23, 1936, while regularly engaged in the performance of his duties, as a motorman in the mine of

the Macon County Coal Company, Smith was struck by rocks dislodged from the roof. His lip, chin and scalp were deeply lacerated, the left side of his pelvis fractured, with upward and inward displacement, and the urethra ruptured at the neck of the bladder. He was taken to St. Mary's hospital in Decatur, where he remained approximately eleven weeks, and on April 7, was permitted to return home. Dr. M. W. Fitzpatrick, physician for the employer, treated Smith at the hospital and afterward at his home, until about October 14, when a blood count, taken at the hospital upon the request of the doctor, disclosed secondary anemia. After consulting with Dr. Dean Stanley, a local examination was made which disclosed the presence of blood. Dr. Fitzpatrick then ordered an X-ray examination. The X-ray picture, taken on October 20, revealed cancer so located in the stomach as not to interfere with the passage of food. Upon the suggestion of his son, Smith consulted Dr. Buckmaster at Effingham, who noted the cancer, but also, observing that Smith was vomiting, weak and emaciated, diagnosed his ailment as sugar starvation. He treated Smith with glucose solutions at St. Anthony's hospital, in Effingham, until November 3, and afterward at his son's home in the same city. Smith died on January 19, 1937.

An examination of the conflicting medical testimony is required to determine whether the evidence was sufficient to support the decision of the commission in favor of the widow, the plaintiff in error, that the death of Bart Smith resulted from his injuries, or, as maintained by the employer, the defendant in error, his death was caused by cancer existing prior to, and independently of, his injuries.

The time when the symptoms of Smith's condition first became apparent is disputed in the testimony. Dr. Fitzpatrick was unable to recall that Smith vomited while under his observation. The records of St. Mary's hospital when introduced, contained no entries of such occurrences, and

several nurses testified it was customary to record any happenings of this nature. Smith's son, however, recounted a number of attacks during his father's confinement in the hospital and afterward at home. In behalf of the plaintiff in error, Dr. Buckmaster testified to the recurrence of these manifestations from the occasion of his first examination of Smith in October until his death. Concerning the other symptoms, Dr. Fitzpatrick admitted Smith was thin when he was discharged from the hospital, but denied any noticeable loss of weight or color prior to the middle of the summer. The testimony of Smith's son, that his father had lost weight and color constantly from the time of his accident, receives support from the fact that Smith was so emaciated, weak and pale in October as to cause Dr. Stanley to suspect he had cancer.

In the divergent opinions of the medical witnesses, Smith's death resulted from either sugar starvation or cancer. Dr. Buckmaster expressed the view that the shock of Smith's injuries prevented absorption of sugar into his blood, causing him to vomit, and his consequent inability to retain food, with only temporary and periodic relief provided by glucose solutions, resulted in death from starvation. In the opinion of Dr. Fitzpatrick, on the other hand, the shortage of sugar content in Smith's blood was not caused by the injuries, but could arise from any depressing condition, and would be influenced by cancer. He did not comment upon whether Smith's injuries might have caused a depressing condition, or whether a deficiency of sugar in the blood could cause death, but stated cancer was the cause of death.

Dr. Buckmaster asserted that a causal connection between the injuries and the cancer could not be denied. Dr. Harry J. Ireland, also testifying on behalf of the plaintiff in error, had not seen the deceased, and his opinion, upon facts presented in the form of hypothetical questions, was that the injuries caused Smith's cancer. He testified that

his experience included traumatically caused cancers, and that while traumatic origin had not been definitely established in any of the stomach cancers he had observed, medical opinion holds that cancers develop from trauma to the stomach and actual instances have been reported. Dr. Fitzpatrick admitted trauma is a cause of cancer, and that if cancer developed after trauma to the stomach he might think there was a causal connection. Dr. Ireland explained that ruptures causing stomach cancer result from trauma to the pelvic portion of the abdomen. These ruptures, he stated, frequently occur in a section of the abdominal cavity not directly injured, and may be microscopic, causing, though not necessarily, a slight hemorrhage. Dr. Fitzpatrick testified he had never seen a cancer of the stomach which he would attribute to trauma, although he had seen other cancers so caused, and was aware of no method known to the medical profession for the determination of traumatic origin of stomach cancer. In his opinion, however, premised upon the absence of injury in the vicinity of the stomach, and of hemorrhage and vomiting immediately following the accident, trauma was not the cause of Smith's cancer. Previously, he admitted observing bruises on the lower part of Smith's body, in the region of the hip and abdomen, and making no physical or X-ray examination of his stomach after the accident. Dr. Fitzpatrick also failed to make an examination for hemorrhage, and the possible presence of slight traces of blood not immediately evident to the eye, similar to the small particles discovered in Dr. Stanley's later minute investigation, must be considered.

It is the province of the Industrial Commission to draw reasonable inferences from the evidence and to determine conflicts arising in the testimony, and its decisions should not be disturbed unless without foundation in, or manifestly against the weight of the evidence. (*Olympic Commissary Co.* v. *Industrial Com.* 371 Ill. 164; *Czerny* v. *Industrial*

*Com.* 369 id. 275; *Rittler* v. *Industrial Com.* 351 id. 338.) When the opinions of the medical experts are conflicting, it is difficult for lay opinion to determine, with the requisite nicety, upon which side the weight of such evidence falls. (*Monark Battery Co.* v. *Industrial Com.* 354 Ill. 494.) Proof of a decedent's perfect health prior to his injury, and of a change occurring immediately after the injury and continuing until his death, is competent to establish that the impaired condition resulted from the injury. (*Plano Foundry Co.* v. *Industrial Com.* 356 Ill. 186.) Prior to the accident, Smith was in a healthy, robust condition, had been in the employ of the Macon County Coal Company for fifteen years, and for three years had lost no time from his work. Subsequent to the accident, he was weak, unable to walk without artificial aid, and developed anemia and vomiting of progressively increasing virulence. The evidence is adequate to allow the conclusion that sugar starvation, resulting from the depressing condition which followed the shock of his injuries, was the cause of his death. On the other hand, Smith suffered severe injuries, an admittedly recognized cause of cancer, in the region where his cancer was located. The physicians employed by the company made no examination at the time of the accident to discover whether Smith's stomach had been directly injured, or by reason thereof, a hemorrhage occurred. From this fact we cannot conclude that Smith did not sustain a direct injury to his stomach, nor that a hemorrhage did not occur. The decision of the commission is supported by ample competent evidence, and should not have been disturbed.

The order of the circuit court of Macon county is reversed, and the cause is remanded, with directions to confirm the award of the Industrial Commission.

*Reversed and remanded, with directions.*