31597. DAVIS *v.* BIBB MANUFACTURING COMPANY.

DECIDED JULY 11, 1947. REHEARING DENIED JULY 29, 1947.

516

*Edward F. Taylor,* for plaintiff.

*Jones, Jones & Sparks, Ed. L. Benton,* for defendant.

PARKER, J. Ober C. Davis applied to the State Board of Workmen's Compensation for a hearing to determine the liability of Bibb Manufacturing Company to him for compensation for the loss of the use of his left arm, alleged to have resulted from an accidental injury to the middle finger of his left hand inflicted on November 10, 1945. Upon a hearing before the single director, an award was made granting compensation for such total loss of use of the left arm, and upon appeal to the full board the award of the single director was affirmed. The superior court reversed this award, and the exception here is to that ruling.

The employer contends that the disability suffered by the claimant does not arise from an accident sustained in the course of the employment, but is the result of a disease, namely cancer. The employer denied the occurrence of the accident. The evidence adduced upon the hearing authorized a finding, that Davis suffered an accidental injury to the middle finger of his left hand on November 10, 1945, which finger and hand had, before that date, been apparently perfectly well, that he reported the injury to his superior immediately and was sent to the mill clinic; that the mill clinic was closed, it being past noon on a Saturday, and he returned to his superior, who applied first aid to the injured finger; that the injury was treated subsequently by the nurse at the mill clinic over a period of about four months; that two days after the injury the claimant was given a job stenciling addresses on boxes; that while so doing he got some stencil ink in the wound of the previous injury; that he reported this occurrence to the mill nurse, who cautioned him that the ink might be poisonous and to wash it out of the injured finger; that in January, 1946, the claimant again accidentally injured the same finger in the course of his employment, and that injury was also reported to his superior; that the injured finger never got well but continued to get worse, and that in March, 1946, the defendant sent the claimant to Dr. James A. Fountain, who treated him; that the finger continued to get worse and in May, 1946, he was sent to Dr. H. G. Weaver, who told the claimant that he had a skin cancer

and that his finger would have to be amputated; and that on June 17, 1946, he entered the hospital, where his finger was amputated and the doctor cut some glands out of his arm and from under the armpit to forestall the spread of the disease.

It appears from the evidence that upon the hearing the claimant was requested by his counsel to remove his shirt so that the director could see where he had been cut. He exhibited first the place where the finger had been amputated, then where he had been cut around the elbow, and the scar on his left arm, and where he had been cut under his shoulder and across his left chest. The claimant then demonstrated how well he could use his left arm by indicating how high he could raise it. One of the physicians testifying for the defendant estimated that there would be somewhere between 25 percent and 50 percent disability of the claimant's shoulder.

Four doctors testified in behalf of the defendant. It is not necessary and would serve no useful purpose to set forth their testimony in extenso. It is sufficient to say that they all were of the opinion that trauma could neither cause cancer nor aggravate a pre-existing cancerous condition and cause it to spread. All the doctors admitted, however, that the medical profession generally knows very little about cancer and does not know the cause of cancer. Dr. Richardson testified that doctors consider a raise of the pigmentation and thickening of the skin a possible pre-cancerous region, but not a cancer in any sense of the word; that such condition might continue for any number of years, or a lifetime, without turning into a cancer; that medical science does not know when such a condition commences to turn into a cancer and what causes the change; and that he (the witness) wouldn't know what would cause pigments on a person's hand to become aggravated or grow or form into a cancer, and that if the claimant had one of these pigments on his hand, the witness would not know what caused it to turn into a cancer. This witness stated further that he did not think that a continual tearing, beating, or mashing of the finger would cause it to turn into cancer, and that although chronic irritation has always been given as one of the possible causes of cancer, this particular form of cancer is not usually caused by injury as far as the medical profession knows; but the witness refused to say that this type of cancer was never caused

by a series of injuries to the same spot on a person's body, and refused to say that if the claimant was hurt as he contended, the injuries would not cause a cancer. Dr. Fountain testified that there was a difference of opinion as to whether a pre-existing cancerous lesion, which had existed for a year or more, could have been aggravated, and caused to produce any different result, by injuries such as the claimant testified that he received in this case. This witness admitted that some (referring to medical authorities) claim that injuries or trauma would aggravate a precancerous condition, while others claimed otherwise, and that there was no proof either way; but his personal opinion was that trauma would not aggravate such condition.

The single director found as a fact, from what he regarded as a preponderance of the evidence, although such preponderance was not necessary to support the finding (*Fralish* v. *Royal Indemnity Co.*, 53 Ga. App. 557 (3), 186 S. E. 567), that the claimant had a cancerous condition in his finger prior to the injury, which became inflamed and was aggravated by the injury of November 10, 1945, and again by the injury in January, 1946. "The aggravation, acceleration, or lighting-up of a pre-existing latent infirmity may constitute a disability of such a character as to come within the meaning of the workmen's compensation act, even though the accident would have caused no injury to a perfectly normal, healthy individual." *Employer's Liability Assurance Corp.* v. *Johnson*, 62 Ga. App. 416, 421 (8 S. E. 2d, 542). "Where a diseased condition of an applicant for compensation, which existed at the time of the injury, is aggravated or caused to 'flare up' as a result of the injury, and produces a disability which otherwise might not have existed as a result of the injury, the incapacity is caused by the injury, and where the accident arises out of and in the course of the employment, compensation will not be denied upon the ground that the disability is a result of the disease." *Pruitt* v. *Ocean Accident and Guarantee Corp.*, 48 Ga. App. 730 (173 S. E. 238).

An award made by the State Board of Workmen's Compensation, in the absence of fraud, is binding on all courts if there is any evidence to sustain it. *Webb* v. *General Accident &c. Ins. Co.*, 72 Ga. App. 127 (33 S. E. 2d, 273), and citations. On appeal to the superior court, such an award, with respect to the sufficiency

of the evidence to support it, stands on the same footing as the verdict of a jury which has been approved by the judge. *Butler* v. *Mitchell,* 49-*Ga.—App.* 315 (175 S. E. 271). The discretion of the judge of the superior court on an appeal from an award of the State Board of Workmen's Compensation is not the same as on a motion for new trial of a case tried before him *(United States Fidelity &c. Co.* v. *Hall,* 34 *Ga. App.* 307, 129 S. E. 305); and the rule of the appellate courts of this State, as to affirmance of the first grant of a new trial, is not to be applied to a judgment of the superior court setting aside such an award. *Maryland Casualty Co.* v. *England,* 34 *Ga. App.* 354 (4) (129 S. E. 446); *Sears, Roebuck & Co.* v. *Griggs,* 48 *Ga. App.* 585 (2) (173 S. E. 194).

"A liberal construction must be given, to effectuate the humane purposes for which it was enacted," to the Workmen's Compensation Act. *Lumbermen's Mutual Cas. Co.* v. *Griggs,* 190 *Ga.* 277, 287 (9 S. E. 2d, 84). In reviewing awards under the act, the courts should construe the evidence in the light most favorable to the prevailing party. *Merry Bros. Brick & Tile Co.* v. *Holmes,* 57 *Ga. App.* 281 (195 S. E. 223); *Glens Falls Indemnity Co.* v. *Sockwell,* 58 *Ga. App.* 111 (197 S. E. 647). When an injury is sustained and thereafter a continued disability ensues, such injury is the proximate cause of the disability, in the absence of some intervening cause; and the burden of showing such intervening cause is upon the employer. *Royal Indemnity Co.* v. *Land,* 45 *Ga. App.* 293, 297 (164 S. E. 492). "Not only may an issue of fact arise from contradictory evidence, but 'implications inconsistent with the testimony may arise from the proved facts; and in still other ways the question of what is the truth may remain as an issue of fact despite uncontradicted evidence in regard thereto.' *Cooper* v. *Lumbermen's Mutual Cas. Co.,* 179 *Ga.* 256, 261 (175 S. E. 577). In order to render any finding of fact demanded as a matter of law, not only must there be no controversy in the evidence material to the issue involved, but the implications and inferences which logically and properly arise from the evidence must necessarily lead to only the one conclusion." *Employer's Liability Assurance Co.* v. *Woodward,* 53 *Ga. App.* 778 (3) (187 S. E. 142), *Merry Bros. Brick & Tile Co.* v. *Holmes,* supra.

One question in this case relates to the amount of the award, that is, whether the evidence sustained the finding as to full dis-

ability of the left arm. The rulings of this court that a director hearing a compensation case may consider the physical appearance of a claimant along with the testimony in reaching a conclusion are applicable to this case. It appears that, when the claimant was testifying, he removed his shirt so that the director could see for himself the nature and extent of the scars on the claimant's body, and that the claimant made a physical demonstration of the extent to which he could use his left arm. We can not say under these circumstances that the award for a 100-percent loss of use of the arm was not authorized by the evidence. See *Abercrombie* v. *Maryland Cas. Co.*, 41 *Ga. App.* 729 (154 S. E. 459); *Liberty Mutual Ins. Co.* v. *Holloway*, 58 *Ga. App.* 542 (199 S. E. 334); *Ingram* v. *Liberty Mutual Ins. Co.*, 62 *Ga. App.* 789 (10 S. E. 2d, 99).

When the rules of law set forth in the authorities cited are applied to the facts of this case, with the implications and inferences which may logically and properly be drawn from the evidence, we think that the findings of fact made by the single director, and the award based thereon, which were affirmed by the full board, were supported by the evidence, and that the award thus made was final, conclusive, and binding on the courts, and that the superior court erred in reversing the award and denying compensation to the claimant.

*Judgment reversed.* *Sutton, C. J., and Felton, J., concur.*