## TRAVELERS INS. CO. v. ROWAND.

### No. 13856.

United States Court of Appeals
Fifth Circuit.

June 12, 1952.

Rehearing Denied July 7, 1952.

Robert S. Vance, Texarkana, Tex., for appellant.

Armond G. Schwartz, Hallettsville, Tex., Joe H. Tonahill, Jasper, Tex., for appellee.

Before HOLMES, BORAH, and RIVES, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from a judgment against appellant, in favor of appellee, rendered under the Workmen's Compensation Act of Texas, Vernon's Ann.Civ.St. art. 8306 et seq. Federal jurisdiction rests solely upon

diversity of citizenship of the parties, and the requisite jurisdictional amount. The appellant admits that the appellee received injuries in Texas, on June 16, 1947, but claims that said injuries were of a partial character and temporary nature. The jury found that the appellee was totally and permanently disabled, and recommended a lump-sum payment, judgment being entered accordingly.

The appellant contends that the evidence is insufficient to support the verdict, because insufficient to establish a causal relationship between the alleged injury of June, 1947, and appellee's cancer. The crucial question here is whether traumatism may reasonably be regarded as a causative factor in cancer of the testicle; and, if so, whether the testimony in behalf of the appellee, including the expert opinions of medical witnesses, was sufficient to warrant a fair jury reasonably to infer and believe that said injury directly and proximately caused appellee's cancer of the testicle.

The appellant asks this court to take judicial knowledge of the fact that science is struggling desperately to determine the cause of cancer, and "that our school children of elementary grades are aware of the failure of science in this field"; but we cannot take judicial notice that to find a causal relationship between the cancer and the injuries of appellee would be indulging in speculation and conjecture. We do not judicially know this to be a fact. The circumstances of appellee's traumatic injury in the course of his employment were clearly proven; the medical history of his case, his operation, hospitalization, and the expert testimony of four doctors who attended him, were also before the jury. We are bound by the substantial evidence that was presented to the jury, to the extent that it is consistent with the verdict, the jury being the sole judge of the credibility of the witnesses and of the weight or value of their testimony.

Appellee was an electrician, and on June 16, 1947, was working for his employer as a lineman. While so engaged, his safety buckle became released, which caused him to be swung around far enough for his right arm to come in contact with a hot electric wire that carried between 6,900 and 11,000 volts of electricity, which passed through his body, burning his arm, leg, feet, back and forehead. The shock from this electric current was so great that he was rendered unconscious and was thrown astraddle of an iron pole, which injured his right testicle, the right side of his scrotum, and the inguinal area of his lower abdomen; as a natural result of which, within two or three days, his right testicle became swollen, his scrotum became bluish in color, and his condition so painful that he was forced to place a pillow between his legs to support that portion of his body in trying to sleep at night. This area remained swollen for several months, during which time he wore a suspensory. Although in pain, the employee went back to work, but his earning power gradually decreased, and he finally became afraid to work in close proximity to high-powered electric wires.

On May 29, 1950, the appellee underwent a surgical operation for malignant teratoma (cancer) of his right testicle, at which time an incision of the right inguinal area and scrotum was made and two small malignant tumors removed from his testicle, one from the upper pole and one from the lower pole. Following this diagnostic operation, the wound was closed; and on June 1, 1950, the appellee underwent further surgery, at which time the right malignant testicle, together with the cord, was removed and a lymph nodal dissection of the inguinal area carried out to the level of the diaphragm, resulting in a condition of metastasis of his left lung at the helium. From all of which, beginning with the electric shock, the appellee claims to have suffered total and permanent incapacity to work. Prior to said injury, the plaintiff was an able-bodied man, well and strong, and fully able to perform all the duties of his employment.

The question in this case that has given us the most concern is as to the sufficiency of the evidence to warrant a finding of total and permanent disability due to appellee's physical injury; not whether he is so disabled, but whether such disability is the result of traumatism or disease. Four doctors testified, three introduced as witnesses for the plaintiff and one for the defendant, all of whom were qualified as ex-

perts on the subject; but only one of whom expressed positively the opinion that the appellee's teratoma was caused by his traumatic injury. Another expressed his positive opinion to the contrary. The other two were of the opinion that the cause of cancer was unknown to medical science at the time of their testimony; but one of the latter two, Dr. Todd, testified that, while the doctors did not know the processes that caused the disease, the disorderly growth which we call cancer has been found in association with such injuries as burns, scars, unhealed wounds, and forms of skin lesions. In response to a properly worded hypothetical question, which was not objected to, Dr. Todd was asked whether such a history as the plaintiff's was calculated to cause this tumor which he found in the patient. His reply was as follows:

"A. I believe that is a question to which you would get varied answers by different physicians, whether it would be consequent to the electrical disturbance in tissue setup, but as a prime cause of cancer I have my serious doubts.

"Q. Then, the field of medicine and doctors are, like you say, very likely in dispute on a thing like that? A. Correct.

"Q. But in your opinion, in all reasonable probability, could that fact situation that I related there, assuming it to be true, could that be reasonably calculated to produce the tumor? A. Not to produce a tumor so much as to probably activate or stimulate a pre-existent tumor, or an area of tissue in which changes were present which rendered them susceptible to malignant change. * * *

"Q. Well, would you say then that trauma might reasonably be the cause of exciting or accelerating or activating dormant potential cancer cells? A. Yes, I would agree with that.

"Q. That is very reasonable? A. That is very reasonable. * * *

"A. Well, of course, it is well known that electrical impulses tend to follow in the body the course of nerves and the testicles are innovated with nerves; therefore, it would be reasonable so far as I am concerned to assume that electrical charge could have gone anywhere.

"Q. Even into his testicle? A. Even into his testicle.

"Q. Because of the innovation process of the nerves from the testicles throughout the nervous system? A. That is correct.

"Q. Then, is it reasonable to assume that that could reasonably happen, then, that way? A. It could reasonably happen.

"Q. And bring about the development of the cancer that was operated? A. I [it] could develop that the electrical charge entered this man's testicle. * * *

"Q. But to say, Doctor, that any particular thing caused the development of this cancer in Mr. Rowand would be sheer speculation, would it not? A. In general, yes, but in my opinion also it could be a reasonable assumption."

The above testimony tends to support the verdict; other portions of the evidence by the same witness tend to the contrary; but it was within the province of the jury, upon fair consideration, to believe or disbelieve all or any part of the evidence of this or any other witness where there was a conflict in the evidence or, even if there was no conflict, where conflicting reasonable inferences might fairly be drawn from the undisputed facts. While a juror may not arbitrarily reject the testimony of any witness, he may pick and choose the part that, after fair consideration, he believes to be true, and may base his verdict upon it, rejecting whatever he sincerely believes is false. This applies, not only to the facts in evidence, but to the expert opinions of witnesses who are in every way qualified to express their opinions upon medical or scientific facts.

Another expert witness for the plaintiff, whose qualifications in every respect were conceded, was Dr. Hendrick. He did not think that the electrical shock within it-

self activated the plaintiff's tumor, but could not say whether the trauma did or did not. He mentioned, however, that practically every tumor that he had seen in the breast, testicle, or exposed area of the body, invariably had a history of having had an injury, either trivial or more extensive, at some prior period of time. In most cases, he though that the trauma called the patient's attention to the tumor; but, he said, we do know that in the area of the mouth chronic irritation from ill-fitting dentures causes cancers; that "we have produced cancer in laboratory animals by what we call carcinogenic agents"; that a few years ago women began to use a certain type of brassiere, called the cup brassiere, most of which were too small and produced pressure on the breast; that some three or four years after these brassieres began to be widely worn, especially by girls and young women, doctors began to see benign tumors, later more cancers, developing in that area with a history of a lump in the breast, than had previously been observed; that he had operated upon a large number of benign and malignant testicular tumors, and all of them gave him a history of some type of trauma; but in this case he did not think the trauma caused the injury, as the plaintiff's type of testicular tumor was very malignant and he could not have had it in 1947. In his experience, this witness did not find that electrical shock of itself would produce cancer or stimulate its growth, except that if a cancer was incompletely removed by electro-surgery, it would take on wild growth, and grow much more rapidly. He recognized that an embryological condition in the body may be activated into cancer, but what causes a particular cyst to undergo a malignant change, he said, is unknown.

Another witness for the plaintiff, Dr. Moseley, testified positively that, in his opinion, the trauma sustained by the plaintiff in 1947 activated the embryonic cells which produced his cancer. By trauma, he meant the blow plus the electrical shock received by Rowand. Asked which had the most to do with it, he said both contributed and he could not answer which was greater. He said: "It is my opinion that the electrical shock received by the patient on June 16, 1947, caused this cancer to form and develop." We cannot judicially reject this testimony, or that of other witnesses tending to support the verdict. The court below fully and fairly instructed the jury upon the law of the case, and there were no exceptions to the charge by either side. We think that the evidence was sufficient to support the verdict, and that there is no reversible error in the record.

Bartkoski v. Pittsburg & Lake Erie R. Co., 3 Cir., 172 F.2d 1007; Macon County Coal Co. v. Industrial Commission, 374 Ill. 219, 29 N.E.2d 87; McCullough v. Industrial Commission, Ohio App., 60 N.E.2d 628; Blackfoot Coal & Land Corp. v. Cooper, 121 Ind.App. 213, 95 N.E.2d 639; Hughes v. Easley Cotton Mill No. 1, 210 S.C. 193, 42 S.E.2d 64; Davis v. Bibb Manufacturing Co., 75 Ga.App. 515, 43 S.E.2d 780; Sligh v. Newberry Electric Cooperative, Inc., 216 S.C. 401, 58 S.E.2d 675; Pittman v. Pillsbury Flour Mills, Inc., 234 Minn. 517, 48 N.W.2d 735; Conduitt v. Trenton Gas & Electric Co., 326 Mo. 133, 31 S.W.2d 21; Dundee Woolen Mills v. Chism, 215 Ark. 126, 219 S.W.2d 628; Scobey v. Southern Lumber Co., 218 Ark. 671, 238 S.W.2d 640; Russo v. Wright Aeronautical Corp., 137 N.J.L. 346, 60 A.2d 263; Id., 51 A.2d 100, 105, 25 N.J.Misc. 109; Id., 1 N.J. 417, 64 A.2d 71; Emma v. A. D. Juilliard & Co., Inc., 75 R.I. 94, 63 A.2d 786; Welch v. Essex County, 6 N.J.Super. 422, 68 A.2d 787; Orff's Case, 122 Me. 114, 119 A. 67; Plucinski v. Rores Luncheonette, 277 App. Div. 803, 96 N.Y.S.2d 773; Voorhees v. Smith-Schoonmaker Co., 86 N.J.L. 500, 92 A. 280; Utah Fuel Co. v. Industrial Commission, 102 Utah 26, 126 P.2d 1070; Elford v. State Industrial Accident Commission, 141 Or. 284, 17 P.2d 568; Causey v. Kansas City Bridge Co., La.App., 191 So. 730; Haward v. Rowsell & Matthews, 7 B.W.C.C. 552.

Affirmed.