# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 30, 2024

Lyle W. Cayce
Clerk

No. 24-50032

In the Matter of DALF Energy, Limited Liability Company,

*Debtor*,

DALF Energy, Limited Liability Company; Titan Vac & Flow, Limited Liability Company; TitanUrbi21, Limited Liability Company,

*Appellants*,

*versus*

GS Oilfield Services, Limited Liability Company; Jeffery Charles Scribner; Jeffery R. Scribner; TROFA Operating, Limited Liability Company,

*Appellees*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:22-MC-1340

_____

Before Haynes, Willett, and Oldham, *Circuit Judges*.

No. 24-50032

Per Curiam:[*]

This case primarily involves common law claims filed by DALF Energy, L.L.C. ("DALF") and TitanUrbi21, L.L.C. ("TU") (collectively, "Plaintiffs")[1] against Jeffrey Scribner regarding several oil and gas lease purchases. We VACATE the dismissal of DALF's breach of fiduciary duty claim and DALF's and TU's fraudulent inducement claims, as detailed herein, and REMAND[2] those claims for further proceedings consistent with this opinion. We AFFIRM the remainder of the district court's judgment.

## I. Background

In 2015, DALF hired Scribner as its independent contractor and agent to identify potential oil and gas investment opportunities in Texas. Scribner initially requested a 10% non-participatory royalty interest as part of his compensation, but DALF denied his request and instead paid him a $14,000 monthly salary. Scribner prepared two prospectuses and associated presentations for DALF, which featured multiple oil and gas properties in Texas. When presenting the information, Scribner identified old wells that he said were mismanaged but, with "new technologies and his expertise," he could bring back into production "at or significantly above their original production levels." Scribner also told DALF that "purchasing and operating these wells came with 'virtually no risk.'"

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

[1] Plaintiffs do not seek a monetary judgment for Titan Vac & Flow, L.L.C. ("Vac & Flow"), and their brief focuses only on DALF and TU. Accordingly, we do not address Vac & Flow further.

[2] We remand to the district court, which entered the final judgment at issue here. The district court may refer the case back to the bankruptcy court for the bankruptcy court to submit proposed findings of fact and conclusions of law in accordance with our opinion. *See* 28 U.S.C. §§ 157(a), (c)(1). We refer to these courts collectively as the "trial court."

No. 24-50032

Relying on Scribner's advice, DALF's parent company, TU,[3] purchased several oil and gas leases in Shackelford, Archer, and Callahan Counties ("Shackelford Wells"). Two of the leases that TU purchased were owned by TROFA Operating, L.L.C. ("TROFA"). At the time, DALF and TU did not know that Scribner's father, J.C. Scribner, managed TROFA.

Several months later, again relying on Scribner's advice, TU purchased additional leases in the panhandle of Texas ("Panhandle Wells"). Several of these purchase agreements assigned an overriding royalty interest to Oil & Gas Holdings, L.L.C. ("O&GH"). DALF and TU learned later that Scribner owned, founded, and managed O&GH.

Scribner sent biweekly or monthly production reports to Plaintiffs. Initially, the production reports showed that the wells were performing well, but DALF and TU eventually became suspicious that Scribner might have been hiding something. They requested additional documentation regarding subcontractors and wanted direct communication with GS Oilfield Services, L.L.C. ("GSOS"), which was the "biggest subcontractor" working on the wells. Scribner claimed he could not reach the owners or managers of GSOS. DALF and TU later discovered that Scribner was GSOS's manager.

On May 22, 2017, Scribner sent Plaintiffs an email with the subject, "Confession." In that email, Scribner admitted he "made some big mistakes on the production reporting side":

> The oil and gas production rates that I sent in the production reports were the rates that we were seeing in the beginning. When leases have been shut in for a long time and then they are worked on and brought back online they come on at very strong rates. Those are the rates that I sent you. I thought we could sustain high rates but we could not. When I sent those reports,

_____

[3] TU owns 98% of the membership interest in DALF.

3

No. 24-50032

> I just kept reporting the same rates and I misled you guys. I thought that I could figure out how to bring the rates back but I could not.

An email exchange followed, in which Scribner provided some additional information. The only lie that Scribner admits to in this email thread is falsifying at least some production numbers. The emails do not clearly indicate when Scribner began sending false production reports.

Plaintiffs sued Scribner, J.C. Scribner, TROFA, O&GH, and GSOS ("Scribner Defendants") in Texas state court for, inter alia, fraud, breach of fiduciary duty, and civil conspiracy. After DALF filed for bankruptcy, Plaintiffs removed their claims to federal court pursuant to 28 U.S.C. § 1452. In August 2022, the bankruptcy court held a trial on Plaintiffs' common law claims. Neither the Scribner Defendants nor their counsel appeared at trial or put on any evidence. Plaintiffs' only live witness was their corporate representative, Carlos Sada. Plaintiffs also admitted documentary evidence, including a transcript of at least part of Scribner's deposition testimony.

In its first Findings of Fact and Conclusions of Law, the bankruptcy court did not consider all of Plaintiffs' claims, so the district court recommitted the matter to the bankruptcy court for further analysis. The bankruptcy court subsequently entered its Second Findings of Fact and Conclusions of Law ("Second FF/CL"), which concluded that each of Plaintiffs' common law claims failed on the merits and recommended that the district court deny all relief sought by Plaintiffs. The district court accepted the Second FF/CL and entered judgment accordingly. Plaintiffs timely appealed.

## II. Jurisdiction & Standard of Review

The district court had jurisdiction over this case because it relates to DALF's Chapter 11 bankruptcy case. *See* 28 U.S.C. § 1334(b). In

4

accordance with 28 U.S.C. § 157(a), the district court referred this case to the bankruptcy court. The bankruptcy court submitted its Second FF/CL to the district court for consideration and review pursuant to 28 U.S.C. § 157(c)(1) and Federal Rule of Bankruptcy Procedure 9033, and the district court accepted the Second FF/CL in its final order.

We have jurisdiction over the district court's final order. *See* 28 U.S.C. § 1291. "[T]he bankruptcy court submitted only proposed findings of fact and conclusions of law to the district court pursuant to 28 U.S.C. § 157(c)(1)," so "we review the district court's findings of fact for clear error and its conclusions of law de novo." *In re Monge*, 826 F.3d 250, 254 (5th Cir. 2016) (italics adjusted).

### III.     Discussion

Plaintiffs appeal the dismissal of their breach of fiduciary duty, fraud, and civil conspiracy claims. We address each in turn.

### A. Breach of Fiduciary Duty

Under Texas law, a plaintiff suing for breach of fiduciary duty must prove "[1] the plaintiff and defendant had a fiduciary relationship, [2] the defendant breached its fiduciary duty to the plaintiff, and [3] the breach resulted in injury to the plaintiff or benefit to the defendant." *Wolf v. Ramirez*, 622 S.W.3d 126, 142 (Tex. App.—El Paso 2020, no pet.) (citing *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017)). "Generally, fiduciaries owe the following duties to their principals: the duty of loyalty and utmost good faith; duty of candor; duty to refrain from self-dealing; duty to act with integrity; duty of fair, honest dealing; and the duty of full disclosure." *Id.* (footnotes omitted).

As the bankruptcy court concluded, Scribner was DALF's agent and thus owed a fiduciary duty to DALF. *See Navigant Consulting, Inc. v.*

*Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) ("[A] formal fiduciary relationship . . . includes the relationship[] between . . . principal and agent." (internal quotation marks and citation omitted)). We also agree with the bankruptcy court that Scribner did not owe a fiduciary duty to TU. Accordingly, we focus only on whether Scribner breached his fiduciary duty to DALF. As detailed below, we conclude that Scribner breached his duty to DALF by (1) falsifying production reports, (2) self-dealing related to O&GH and TROFA, (3) exaggerating risk predictions regarding the wells, (4) placing "P.E." after his name, and (5) financially benefitting from using GSOS as a subcontractor.

### 1.    *Falsified Production Reports*

At some point, Scribner began falsifying production numbers, which is a clear violation of his fiduciary duty to DALF. *See Valdez v. Hollenbeck*, 465 S.W.3d 217, 230 (Tex. 2015) ("A fiduciary relationship gives rise to a duty of full disclosure of all material facts."). Nevertheless, the bankruptcy court dismissed DALF's fiduciary duty claim based on the falsified production reports because, according to the court, "Plaintiffs have not identified with any degree of specificity what losses DALF suffered once Scribner began falsifying the production records."

There is admittedly some ambiguity in the record regarding when Scribner began falsifying production reports. However, unlike the bankruptcy court, we do not think that ends the inquiry. Plaintiffs' financial records show that they made payments to Scribner as late as May 1, 2017. Scribner sent his confession email on May 22, 2017, in which he indicated that he had sent Plaintiffs multiple false reports. According to the bankruptcy court's findings, Scribner sent Plaintiffs "monthly or biweekly reports." Those facts show that Scribner sent at least one false production report to Plaintiffs before May 1, 2017, but Scribner did not confess until later in May.

6

Thus, at the least, Plaintiffs suffered some injury—in the form of their payments to Scribner on May 1, 2017, which they presumably would not have paid knowing the reports were false—as a result of Scribner's falsification of production numbers and belated confession.

Because Scribner's falsification of production reports caused DALF at least *some* injury, it was impermissible for the bankruptcy court to dismiss the claim solely due to uncertainty in the amount of damages. *See Dyll v. Adams*, 167 F.3d 945, 947 (5th Cir. 1999) (stating that, under Texas law, "[u]ncertainty as to the fact of legal damages is fatal to recovery, but uncertainty as to the amount will not defeat recovery" (quoting *McKnight v. Hill & Hill Exterminators*, 689 S.W.2d 206, 207 (Tex. 1985))). We thus remand to the trial court to calculate an appropriate amount of damages.

### 2.      *Self-Dealing*

Scribner also breached his fiduciary duty to DALF by (1) reserving overriding royalty interests for O&GH in the contracts for the Panhandle Wells but failing to tell DALF that he founded, owned, and managed O&GH, and (2) failing to disclose that his father managed TROFA. The bankruptcy court erred in concluding that these actions did not constitute breaches because DALF was not a party to the purchase transactions. To the contrary, under Texas law, a fiduciary's duties include "the general duty of *full disclosure* respecting matters affecting the principal's interests and a general prohibition against the fiduciary's using the relationship to benefit his personal interest, except with the full knowledge and consent of the principal." *Chien v. Chen*, 759 S.W.2d 484, 495 (Tex. App.—Austin 1988, no writ). Once TU purchased a lease, DALF became responsible for managing and operating the wells. Thus, TU's purchases directly affected DALF's interests, meaning Scribner owed DALF the duty of full disclosure

regarding the purchases that he facilitated between TU and the sellers. *See id.*

Yet, Scribner did not tell DALF about his relationship with O&GH. DALF had previously refused to grant Scribner royalties as part of his compensation, which suggests that TU would not have made any purchases knowing Scribner would receive royalties as a result. Scribner would have known that as well—indeed, perhaps that explains the timing of his formation of O&GH (during February 2017) and his misrepresentation to a seller regarding O&GH's relationship to TU. Moreover, the facts also suggest that Scribner used his relationship with DALF to influence TU to sign purchase contracts that assigned royalties to Scribner's own company. Without "the full knowledge and consent of [DALF]," these actions constituted a breach of Scribner's fiduciary duty, regardless of the fact that DALF was not a party to the sales transactions. *See id.*

For essentially the same reasons, Scribner also breached his fiduciary duty to DALF by failing to disclose that his father managed TROFA. *See Mims v. Beall*, 810 S.W.2d 876, 880 (Tex. App.—Texarkana 1991, no writ) (stating that "[t]he rule against self-dealing extends to the fiduciary's dealings with . . . other persons whose interests are closely identified with those of the fiduciary," including "a parent-son relationship"). Sada even testified specifically that "knowing that J.C. Scribner was going to benefit from the purchase(s) would have been material to Plaintiffs' decision to invest," which further demonstrates that Scribner had a duty to disclose this fact to DALF. *See Valdez*, 465 S.W.3d at 230 ("A fiduciary relationship gives rise to a duty of full disclosure of *all material facts*." (emphasis added)).

We therefore conclude that Scribner breached his fiduciary duty to DALF when he failed to disclose his relationship with O&GH and TROFA, and we remand to the trial court to calculate the resulting damages.

No. 24-50032

### 3.      *"No Risk" Statements*

Scribner told DALF that purchasing and operating the Shackelford Wells came with "virtually no risk." He similarly told DALF that there was "no risk involved" in investing in the Panhandle Wells. But Scribner apparently knew these "no risk" statements were at least an exaggeration: at his deposition, he testified that "it's well understood that nothing is automatic and there's always somewhat risk [sic] involved." TU relied on Scribner's risk predictions in purchasing all of the wells, as Scribner knew it would. As a result, DALF became the manager and operator of unprofitable wells. Scribner's "no risk" statements thus breached his fiduciary duties to DALF because he did not fully disclose the risks associated with matters affecting DALF's interest. *See Chien*, 759 S.W.2d at 495. We therefore remand this issue to the trial court to calculate damages.

### 4.      *Professional Credentials*

Plaintiffs claim that Scribner lied about his professional credentials by placing the letters "P.E." after his name in his email signature and on other documents, including the prospectuses. Plaintiffs believe "P.E." stands for "Professional Engineer," which is "a specialized designation not all engineers obtain." Scribner admitted at his deposition that he never received the Professional Engineer certification.[4] The question, then, is whether Scribner violated his duties of candor and full disclosure when he placed "P.E." after his name despite not being a licensed Professional Engineer. We conclude he did, especially given that the Texas Board of Professional

---

[4] The Second FF/CL states that Scribner's deposition was "admitted into evidence by Plaintiffs." Accordingly, the bankruptcy court clearly erred in concluding "DALF produced no evidence at trial demonstrating whether Scribner is a professional engineer."

9

No. 24-50032

Engineers and Land Surveyors uses the initialism "P.E." to refer to licensed Professional Engineers.[5]

Scribner's purported status as a Professional Engineer lent credence to the specialized knowledge that he claimed to have regarding the wells. That was a foreseeable—if not intentional—consequence of his actions. However, it is unclear whether Scribner's misrepresentations regarding his licensure as a Professional Engineer caused DALF any damages, particularly in light of Scribner's other experience.[6] *See First United Pentecostal Church of Beaumont*, 514 S.W.3d at 220–21 (stating causation is an element to recovering actual damages for breach of fiduciary duty). We thus remand for the trial court to address that question.

### 5. *GSOS*

According to the Second FF/CL, when Sada asked to have direct communication with GSOS, "Scribner claimed he could not get ahold of the owners or managers of GSOS" even though he was the GSOS's manager. That blatant lie violated Scribner's duty of candor to DALF. Further, as GSOS's manager, Scribner financially benefited from using GSOS as a subcontractor on the wells, so failing to disclose that personal interest also violated his duties to DALF. *See Chien*, 759 S.W.2d at 495. However, it is

---

[5] *See PE Roster*, Tex. Bd. of Prof. Eng'rs and Land Surveyors, https://pels.texas.gov/roster/pesearch.html?ver=V062723; *see also Huskey v. Jones*, 45 F.4th 827, 831 n.3 (5th Cir. 2022) (noting we can take judicial notice of a state agency website).

[6] There is no evidence in the record that any of Scribner's other representations regarding his education and experience in the oil and gas industry were false.

not clear whether this breach caused any injury to DALF. We thus remand for the trial court to address that question in the first instance.[7]

\* \* \*

In sum, we first conclude that DALF proved each element of its breach of fiduciary duty claims based on Scribner's falsification of production records, failure to disclose his relationship to O&GH, and failure to disclose his father's relationship to TROFA. We therefore vacate the dismissal of those claims and remand for the trial court to calculate damages. Second, we conclude that DALF proved Scribner breached his fiduciary duty by placing "P.E." after his name and failing to disclose his relationship to GSOS, and we remand those claims for the trial court to determine whether those breaches caused DALF an injury.[8] The breach of fiduciary duty claims that are not a part of these claims are affirmed.

## B. Fraud

Plaintiffs identify four categories of Scribner's representations or nondisclosures that they claim are actionable as fraud: (1) reservation of

---

[7] Sada also testified at trial that he found duplicate invoices for work performed by GSOS, and he inferred that Scribner was "double dipping." Plaintiffs provided no evidence refuting Scribner's explanation for the duplicate invoices. In the absence of additional evidence, the bankruptcy court did not clearly err by crediting Scribner's explanation over Plaintiffs' inference, nor did it err in concluding that Plaintiffs have not carried their burden to establish a breach of fiduciary duty based on the invoices.

[8] As part of their damages framework, Plaintiffs seek the compensation that they paid to Scribner. Accordingly, the trial court may also consider on remand whether DALF is entitled to the equitable remedy of fee forfeiture even in the absence of an injury resulting from Scribner's breaches of his fiduciary duty. *See First United Pentecostal Church of Beaumont*, 514 S.W.3d at 221 (encouraging fee forfeiture even if breach of fiduciary duty does not cause injury); *see also UTSA Apartments, L.L.C. v. UTSA Apartments 8, L.L.C. (In re UTSA Apartments 8, L.L.C.)*, 886 F.3d 473, 495 (5th Cir. 2018) ("[U]nder Texas fiduciary law governing agency, a plaintiff need not prove causation and actual damages when seeking equitable relief such as fee forfeiture.").

overriding royalty interests, (2) duplicate invoices, (3) falsified production reports, and (4) opinions about profitability. We agree with the bankruptcy court that Plaintiffs have failed to carry their burden to prove fraud based on Scribner's reservation of overriding royalty interests and the allegedly duplicative invoices. We therefore affirm the dismissal of those claims. However, as detailed below, the bankruptcy court erred in dismissing Plaintiffs' fraudulent inducement claims based on the falsified production reports and Scribner's opinions about the wells' profitability.

### 1.    *Falsified Production Reports*

To show fraudulent inducement under Texas law, a plaintiff must prove:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).

The bankruptcy court found—and we agree—that Plaintiffs have satisfied all of the liability elements[9] of fraudulent inducement regarding the falsified production records. However, the bankruptcy court ultimately concluded that Plaintiffs could not recover on this claim because they failed to provide "a method to calculate damages." To the extent the bankruptcy court's denial of recovery for this claim was based solely on uncertainty in

---

[9] The bankruptcy court stated that "Plaintiffs can easily satisfy all elements, except one." But the only missing piece that the court identified was "a method to calculate damages," which goes to the amount of damages but not the fact of them.

the amount of damages, that is error as a matter of law. *See McKnight*, 689 S.W.2d at 207. Moreover, as detailed previously, Plaintiffs did prove at least some monetary harm resulting from the falsified production numbers, meaning they have met their burden to prove the fact of legal damages. Accordingly, we vacate the dismissal of this claim and remand for the trial court to calculate damages.

### 2.     *Opinions about Profitability*

Plaintiffs also argue that Scribner's opinions about the wells' profitability expressed in the prospectuses and related presentations were material and false representations that serve as an independent basis for their fraudulent inducement claim. The bankruptcy court held, and we agree, that the prospectuses and associated presentations were material and that Plaintiffs relied on them. The issue is whether these opinions about profitability are actionable representations.

Under Texas law, "*[p]ure* expressions of opinion are not actionable." *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983) (emphasis added). However, longstanding Texas law also establishes that an expression of opinion can serve as a basis for fraud under certain circumstances, including: (1) if the speaker has knowledge of the opinion's falsity, (2) if the opinion pertains to "the happening of a future event" and "the speaker purports to have special knowledge of facts that will occur or exist in the future," or (3) if the opinion is "based on past or present facts." *Id.* All three exceptions apply even in the context of predictions and opinions regarding future profitability. *See Guevara v. Lackner*, 447 S.W.3d 566, 577 (Tex. App.—Corpus Christi–Edinburg 2014, no pet.); *see, e.g.*, *Exxon Corp. v. Miesch*, No. 13-00-00104-CV, 2012 WL 4854726, at *3, *6 (Tex. App.—Corpus Christi–Edinburg Oct. 11, 2012, pet. denied) (holding Exxon's representations that oil and gas reserves "were depleted, 'there is nothing there,' or they would

last only a couple more years" were not pure expressions of opinion, but rather covered by the exceptions).

Contrary to this precedent, the bankruptcy court concluded that Scribner's opinions about profitability were not actionable solely because they were "statement[s] of belief about the future earnings or profitability of a business," which "cannot be the basis for a fraud claim." The bankruptcy court's failure to consider the aforementioned exceptions to the opinion rule was error. *See, e.g.*, *Paull v. Capital Res. Mgmt., Inc.*, 987 S.W.2d 214, 219 (Tex. App.—Austin 1999, pet. denied) (stating that determining statements "generally fit within the opinion category" does not end the inquiry into whether they are actionable as fraud). Accordingly, we vacate the dismissal of this claim and remand for the trial court to consider, in the first instance, whether any of these exceptions apply. *See Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017) ("[A] court of appeals sits as a court of review, not of first view." (quotation omitted)).

## C. Civil Conspiracy

Proving civil conspiracy under Texas law requires showing "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Firestone Steel Prod. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996). In their briefing before us, Plaintiffs argue only that the bankruptcy court should have found J.C. Scribner liable for conspiracy. The evidence supporting J.C. Scribner's involvement in a conspiracy consists of (1) the fact that J.C. Scribner owned TROFA and is Scribner's father, and (2) Sada's testimony that "'a lot of different people' had told him they saw Scribner and J.C. Scribner together in the oil fields."

We conclude that this evidence is insufficient to show J.C. Scribner's involvement in a conspiracy. We see no error in the bankruptcy court's

conclusion that Sada's testimony regarding J.C. Scribner was "classic hearsay and lack[ed] any indication of reliability." *See Luwisch v. Am. Marine Corp.*, 956 F.3d 320, 331 (5th Cir. 2020) (per curiam) (stating the trial court "ha[s] the unique ability to observe [the witness] and to judge his credibility"). Moreover, contrary to Plaintiffs' suggestion, a fact finder is not required to find testimony credible simply because it is unrefuted at trial. *See Travelers Ins. Co. v. Rowand*, 197 F.2d 283, 285 (5th Cir. 1952) (stating the jury is entitled to disbelieve uncontested witness testimony "where conflicting reasonable inferences might fairly be drawn from the undisputed facts"); *see also Semper v. Santos*, 845 F.2d 1233, 1237 (3d Cir. 1988) (stating that "the jury was under no obligation to believe the testimony of [a witness] as to his chest pain, even if that testimony were undisputed"). Even if the bankruptcy court had credited Sada's testimony, there is still no record evidence that J.C. Scribner "planned, assisted, or encouraged [Scribner's] acts." *See Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925–26 (Tex. 1979) (quotation omitted).

Plaintiffs have thus failed to prove J.C. Scribner's participation in the alleged conspiracy, which is fatal to their civil conspiracy claim. *See Firestone Steel Prod. Co.*, 927 S.W.2d at 614 (stating an action for conspiracy requires showing at least two people involved). We therefore affirm the dismissal of Plaintiffs' civil conspiracy claim. *See Gilbert v. Donahoe*, 751 F.3d 303, 311 (5th Cir. 2014) ("[W]e may affirm on any ground supported by the record." (internal quotation marks and citation omitted)).

## IV.    Conclusion

We VACATE the dismissal of DALF's breach of fiduciary duty claim and DALF's and TU's fraudulent inducement claims and REMAND those claims for further proceedings consistent with this opinion. We AFFIRM the remainder of the district court's judgment.